ROBERT W. SULLIVAN, JR., & others[1] vs. FIRST
MASSACHUSETTS FINANCIAL CORPORATION & another[2]
(and a companion case[3]).

Plymouth. January 8, 1991. - April 17, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Trust Company. Bank. Corporation*, Stockholder, Stock. *Practice, Civil*,
Class action, Jury trial. *Value. Fraud. Fiduciary. Witness*, Expert. *At-
tachment. Injunction.*

The stock appraisal provisions of G. L. c. 156B, § 90, were not applicable
in the context of a reduction of the capital stock ("reverse stock split")
of a trust company regulated by G. L. c. 172. [786]

Discussion of the common law remedies available to dissenting minority
stockholders whose ownership interest in a trust company is eliminated
by a reverse stock split. [786-787]

In a class action by minority stockholders of a trust company challenging
the fairness of the price they received for their shares in a reverse stock
split, the plaintiff class consisted of all minority stockholders as of the
date of the stockholders' meeting at which the reverse stock split was
approved, 'and not only the dissenting stockholders, where the majority
stockholder, as matter of law, had breached its duty of full and fair
disclosure to the minority stockholders. [787-789]

The judge who certified the plaintiff class in an action by the minority
stockholders of a trust company could not properly require that those
stockholders wishing to join the class affirmatively elect to do so. [789-
790]

In the circumstances of a civil trial during which the plaintiff voluntarily
withdrew the claim for which a jury trial was required, the judge did
not abuse her discretion in deciding to submit the plaintiffs' remaining
claims to the jury. [790-791]

---

[1]Joseph Landis. The named plaintiffs appear individually and on behalf
of a class consisting of all minority stockholders of Massachusetts Bank
and Trust Company.

[2]Edward S. Buchanan.

[3]Massachusetts Bank and Trust Company *vs.* Robert W. Sullivan, Jr.,
and Joseph Landis.

At trial of a civil action, the judge was not obliged to strike the testimony of expert witnesses as to the value of certain corporate stock, where the experts' errors, which affected only the weight, and not the admissibility, of their testimony were brought to the jury's attention by cross-examination. [791-792]

At the jury trial of a civil action, the judge did not abuse her discretion by admitting an accountant's expert testimony as to the effect of certain complicated provisions of Federal tax law. [793]

In a civil action, the judge had statutory authority to enter, in response to the plaintiffs' postjudgment motion, an order enjoining one of the defendants from transferring, encumbering, or otherwise alienating his shares of stock in two corporations incorporated in other States. [793-795]

CIVIL ACTION commenced in the Superior Court Department on January 30, 1985.

The case was tried before *Barbara J. Rouse,* J., and a postjudgment motion was heard by her.

CIVIL ACTION commenced in the Superior Court Department on March 25, 1985.

The case was heard by *Rouse,* J.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Richard M. Zinner* (*Jane P. Morse* with him) for First Massachusetts Financial Corporation & others.

*Stephen S. Young* (*Miriam J. McKendall & Ieuan G. Mahony* with him) for Robert W. Sullivan, Jr., & others.

WILKINS, J. On January 16, 1985, Edward S. Buchanan, president of Massachusetts Bank and Trust Company (Massbank) and in control of 85% of Massbank's stock through his indirect ownership of 100% of the stock of First Massachusetts Financial Corporation (First Massachusetts), sent a notice to Massbank's stockholders of a "proposed 1 - for - 2,500 reverse stock split" that would be considered at Massbank's January 29, 1985, annual meeting. Only Buchanan owned 2,500 or more shares of Massbank stock. The reverse stock split which was approved at the meeting left Buchanan, through First Massachusetts, as the sole owner of Massbank stock.

As will be seen, the principal issue in these consolidated appeals is whether the per share price of $190.77 that Massbank offered to pay its minority stockholders was fair and reasonable and, if not, what a fair price would have been on January 29, 1985. In the class action, which is one of the two cases that are here on appeal, a jury determined that a fair and reasonable price for each Massbank share would have been $468.13. First Massachusetts and Buchanan have appealed from a judgment based on the jury's finding.

Before we discuss that appeal, we shall consider Massbank's appeal from a judgment that dismissed an action that it brought against those stockholders who voted against the reverse stock split. By its action, believing that the price offered to the minority stockholders who voted against the reverse stock split was fair, Massbank sought an appraisal pursuant to G. L. c. 156B, § 90 (1988 ed.), of the value of the objecting stockholders' shares. The defendants moved to dismiss the action because, in their view, the appraisal provisions of G. L. c. 156B did not apply to the reverse stock split. The judge, who was to become the trial judge, had already ruled in the class action that the appraisal provisions of G. L. c. 156B did not apply to a reverse stock split of Massbank's stock and that, therefore, the class action was not barred by those appraisal provisions. Acting consistently with her ruling in the class action that the appraisal provisions of G. L. c. 156B were inapplicable, she dismissed Massbank's G. L. c. 156B action. Buchanan and First Massachusetts argue that the appraisal provisions of G. L. c. 156B do apply to the reverse stock split and that the appraisal remedy is exclusive and available only to those minority stockholders who objected to the reverse stock split.

Following the jury's verdict and the entry of judgment, the trial judge allowed the plaintiffs' motion in the class action for an equitable attachment of stock owned by Buchanan. Buchanan has appealed from that order as well. We shall consider the equitable attachment after we have discussed each case on its merits. We transferred these consolidated appeals here on our own motion.

1. The judge properly allowed the motion to dismiss Massbank's action seeking an appraisal of the value of the objecting stockholders' stock. Massbank is a trust company regulated by G. L. c. 172 and is not generally regulated by G. L. c. 156B. See G. L. c. 156B, § 3(*a*), which states those corporations to which G. L. c. 156B applies. Section 3(*b*) of G. L. c. 156B further states in effect that G. L. c. 156B applies to a trust company only according to "the express provisions of any other general or special law to the extent provided thereby." Massbank has pointed to no general or special law that expressly provides that the appraisal provisions of G. L. c. 156B apply to a chapter 172 corporation. A reasonably comparable situation existed in *Breen* v. *Wollaston Golf Club*, 368 Mass. 776 (1975), where a minority shareholder of a chapter 180 corporation objected to the corporation's sale of substantially all its assets and wanted to be paid the value of his stock. We concluded that, in the absence of an express provision in G. L. c. 180, or elsewhere, that made the appraisal provisions of G. L. c. 156B applicable to a nonprofit corporation organized under G. L. c. 180, the stockholder had no appraisal rights under G. L. c. 156B. *Id.* at 778. We also ruled that he had no common law appraisal rights. *Id.* at 779. If anything, this case is stronger than the *Breen* case as to the absence of statutory appraisal rights of minority stockholders because G. L. c. 172 refers to G. L. c. 156B appraisal rights as to mergers and consolidations of trust companies (G. L. c. 172, § 36 [A] [4]) but conspicuously fails to do so in discussing a reduction in the capital stock of a trust company (G. L. c. 172, § 24). Massbank's appraisal action was properly dismissed.

We should not leave the subject of appraisal rights without noting that a minority stockholder in a trust company whose ownership is eliminated by a reverse stock split must have some avenue of relief to pursue if the price offered is not fair and reasonable. Unlike the minority stockholder in the *Breen* case, *supra*, who had no appraisal rights on the sale of substantially all the corporation's assets but retained his interest in the club's assets following the sale, the minority stockhold-

ers of Massbank were relieved of their ownership interest and offered payment at a price dictated by the majority owner. In such a case in the future, assuming no statutory change, we would expect dissenting minority stockholders of a Massachusetts trust company to have common law rights of appraisal similar to those described in G. L. c. 156B, including proper notice of their rights from the corporation. Certainly objecting minority stockholders must have a means of challenging the fairness of a price dictated to them by the majority.

The objecting shareholders in this case did not proceed on such a common law appraisal approach. It was, of course, not clear at the time of the reverse stock split that such a right existed. Moreover, on such an approach, only those minority shareholders who objected to the reverse stock split could be plaintiffs in an appraisal action. Claims of non-objecting stockholders based on illegal or fraudulent corporate action would not be barred, however, even if the appraisal statute did apply to this transaction. G. L. c. 156B, § 98.

The plaintiffs as a class alleged various acts of wrongdoing against Buchanan, Massbank, and First Massachusetts. By the time the class action went to trial, several theories of liability had disappeared from the case (and are not important to this appeal). There remained claims of a breach of fiduciary duty against Buchanan and First Massachusetts and claims of fraud and deceit against Buchanan and Massbank. At the conclusion of the plaintiffs' case, they stipulated to the dismissal of their counts based on fraud and deceit. The case went forward only against Buchanan and First Massachusetts, only on the theory of their breaches of fiduciary duty to the plaintiff class, and only seeking a remedy in the form of a determination of the fair value of the minority stockholders' stock. We shall refer to Buchanan and First Massachusetts as the defendants in the balance of this opinion.

2. We consider now the class action, turning first to the question of what shareholders should be part of the class, and then passing on the defendants' challenges to various rulings during the trial.

The plaintiffs argue that, because of the defendants' breaches of fiduciary duty, the plaintiff class properly includes not only those relatively few minority shareholders who voted against the reverse stock split but also all those who voted for it. The claim of breach of fiduciary duty is based on alleged inaccuracies in the January 16, 1985, letter that Buchanan sent to Massbank stockholders describing the reverse stock split. The letter stated that "[t]he Massachusetts Commissioner of Banks has already given the Bank his permission to proceed with the proposed reverse stock split." The commissioner had not, however, approved the per share price of $190.77 that Massbank offered. It was a jury question whether a reasonable stockholder might infer that the commissioner had done so. Additionally, the letter stated that the purpose of the reverse stock split was to reduce the number of stockholders from 125 to 35 or fewer "in order to permit the Bank eventually to elect to become an S Corporation."[4] There was a jury question whether the stated reason was the real reason for Buchanan's desire to effect a reverse stock split. Buchanan did not testify at the trial, and an inference was warranted that his reason for seeking the reverse stock split had no relationship to the tax benefits of Subchapter S status for Massbank.

Thirdly, the letter of January 16 stated that, if the reverse stock split is approved and carried out, "any stockholder who is adversely affected thereby may have a statutory right to demand . . . payment for his shares and appraisal of the value thereof." We have already ruled that objecting Massbank minority stockholders had no such statutory rights. The January 16, 1985, letter does not mention what rights a stockholder might have if there were no statutory appraisal rights, although a reasonable stockholder might infer from the letter that there were none. We rule that, as a matter of law, in characterizing the stockholders' option for relief from

---

[4]A "Chapter S" corporation is one that under Subchapter S of ch. 1 of Subtitle A of the Internal Revenue Code is not subject to income tax. 26 U.S.C. §§ 1361-1363 (1990).

the per share price offered as limited to a possible statutory appraisal right, the defendants did not deal fairly with the minority stockholders.[5] As a consequence of this breach of duty to make full and fair disclosure, the minority stockholders who voted for the reverse stock split were not in a position to make an informed decision and are not bound by their votes. They are, therefore, properly included in the plaintiff class, and are entitled to a determination and award of the fair value of their shares.[6] We must deal with one other issue concerning the composition of the class in this case.

At an early stage in the case, and before this court's opinion in *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595 (1985), was issued, a Superior Court judge, other than the trial judge, ruled that any minority stockholder as of January 29, 1985, who wished to join the class that he had certified could do so only by affirmatively opting to join it. About one-third of the minority shares elected not to join the class within the time the judge prescribed. The plaintiffs thereupon sought relief in the Appeals Court from the "opt in" requirement of the judge's order, relying on the *Fletcher* case that had held that an order allowing persons to "opt out" of a class was not permitted under Massachusetts law. A judge of the Appeals Court agreed with the plaintiffs' claim, ruling that the "opt in" provision in the certification of the plaintiff class was unlawful (describing it as just the other side of the coin from an "opt out" provision) and ordering that the class include all

---

[5]Because, as we have just ruled, the plaintiff class was entitled to an appraisal of the value of their shares as a matter of law, we now know that the question of the defendants' breach of fiduciary duty need not have been tried to the jury.

[6]Because all minority stockholders are entitled as a matter of law to be included in the plaintiff class, there is no merit to the defendants' objection to the judge's failure to ask the jury, pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), to answer questions focused on obtaining the specific basis or bases for their finding of a breach of fiduciary duty. The distinction made in *Pavlidis* v. *New England Patriots Football Club, Inc.*, 675 F. Supp. 696 (D. Mass. 1987), between the rights of stockholders who voted for, and those who voted against, a merger is, therefore, not important.

minority stockholders of Massbank as of January 16, 1985. A single justice of this court denied the defendants' petition under G. L. c. 211, § 3 (1988 ed.), for relief from the Appeals Court order.

We might dispose of the defendants' challenge to this order by noting that they have not appealed from it. We shall assume, however, that no separate appeal is needed to raise the question after entry of a final judgment in the Superior Court consistent with the Appeals Court's order. Massachusetts law does not allow an "opt in" class any more than it allows an "opt out" class. We agree with the defendants, however, that the Appeals Court order should have selected January 29, 1985, the date of the stockholders' meeting, as the date for the determination of the class members and that a stockholder who sold his shares in the interval after January 16 but before January 29 is not properly a member of the plaintiff class.

We have now reached those issues that concern rulings made during the trial of the class action. The defendants claim error in (1) the submission of the breach of fiduciary duty issues to the jury once the fraud claims were withdrawn from the case, (2) various evidentiary rulings, (3) the failure of the evidence to support the verdict, and (4) the judge's instructions to the jury.

The judge did not abuse her discretion in deciding to submit the breach of duty claims to the jury, even though, standing alone, those claims were not ones as to which a jury trial was required. Because the plaintiffs were not seeking rescission, but only the value of their stock, the fraud claim was a doubtful proposition as a class claim from the beginning. The two named class members were sophisticated investors, one a lawyer and the other a stockbroker, and the reverse stock split was going to occur no matter what minority stockholders believed. Each testified that he was not misled to vote for the reverse stock split. Perhaps the defendants' motion for summary judgment on the fraud counts should have been allowed. If it had been allowed, a jury trial would have been unnecessary. After trial, however, we do not con-

sider the propriety of the denial of a motion for summary judgment. See *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 126 (1986). Moreover, it appears from the record that the judge had participated in settlement discussions, which is entirely appropriate in a jury trial. That participation would, however, make inappropriate the judge's assumption of a fact-finding role. A mistrial was the only apparent alternative, and the defendants did not move for one.

The judge did not err in continuing the trial with a jury, even though the plaintiffs' right to a jury trial disappeared upon their voluntary withdrawal of the fraud claim. The judge had the option, in her discretion, to continue with the jury, unless there was substantial prejudice to the defendants in doing so. There was not. The judge told the jury to disregard the fraud claim. It would have been better if she had told them that the plaintiffs had withdrawn that claim. It does not appear that prejudicial evidence bearing on only the fraud claim was admitted. Such evidence of fraud as there was, was the same as the evidence of a breach of fiduciary duty on which the plaintiffs relied. The issues were not so complex as to make them incomprehensible to a jury. There was thus no error in continuing with a jury trial. See *Charles River Constr. Co.* v. *Kirksey*, 20 Mass. App. Ct. 333, 339 (1985) ("not surprisingly, our search of the Massachusetts cases has revealed no judgment reversed because a jury trial was improvidently granted").

The judge did not commit reversible error in her various rulings on evidentiary questions. It is true that the plaintiffs' experts testified to the value of Massbank stock on the basis of at least two assumptions that were not factually correct. First, the plaintiffs' experts included about $185,000 in accrued interest on Massbank bondholdings that apparently was already reflected elsewhere in the asset valuations they issued. This error, not invalidating the experts' entire testimony, was fully identified. Secondly, Massbank had owned stock in a company named Charterbank and, several months before the reverse stock split, Massbank had rejected an offer of cash or stock in a company that was taking over

Charterbank. Each of the plaintiffs' experts used, alternatively, the value of the two rejected offers instead of the value of Massbank's claim for an appraisal of its Charterbank stock. It is the appraisal claim, based on the value of Charterbank stock at the time of its takeover, that Massbank owned on January 29, 1985. By cross-examination, the defendants brought this error to the attention of the jury. Because a strong inference arises that, in rejecting the offers, Buchanan had thought the Charterbank stock was worth more than what Massbank was offered for the stock, the defendants were not likely to have been prejudiced by the error. The defendants' expert testified that any after-tax, unrealized gains in Massbank's stock portfolio, a large portion of which was attributable to Massbank's holdings in Charterbank, should accrue to stockholders, and she reflected those amounts in her conclusions as to value, without, however, stating how she valued Massbank's interest as to Charterbank.

The judge was not obliged to strike the plaintiffs' experts' testimony. The errors went to the weight of that testimony. The judge's decision to permit the plaintiff Sullivan, a stockbroker, to testify as to the value of the Massbank shares was within her discretion. See *Drake* v. *Goodman,* 386 Mass. 88, 90-91 (1982); *Campbell* v. *Thornton,* 368 Mass. 528, 541 (1975).[7]

---

[7]There was no reversible error in the use of the valuation procedures adopted by the plaintiffs' experts. The relevant factors to consider are largely for the appraisers to select. See *Sarrouf* v. *New England Patriots Football Club, Inc.,* 397 Mass. 542, 547 n.8 (1986); *Leader* v. *Hycor, Inc.,* 395 Mass. 215, 224 (1985). We need not discuss the various approaches to value. The defendants brought out thoroughly their various objections to the procedures used by the plaintiffs' experts (including, as we have said, errors of fact in assumptions made by these experts). The fact that the jury returned a verdict valuing the Massbank stock well below the per share values ($642-$649; $730-$840) those experts gave suggests the effectiveness of the defendants' endeavors. Certainly, the fact that the per share value the jury arrived at was not supported precisely by the testimony of any one expert is not a valid ground for objection. See *Piemonte* v. *New Boston Garden Corp.,* 377 Mass. 719, 731 (1979); *Loschi* v. *Massachu-*

We reach now the final evidentiary challenge. Over objection, the judge permitted an accountant experienced in Federal income tax law to testify that Massbank, as a bank, could not have qualified for Subchapter S status and that, for certain, while First Massachusetts held stock in Massbank, Massbank could not so qualify. The defendants argue that the admission of this opinion of law was error. See *Perry* v. *Medeiros*, 369 Mass. 836, 842 (1976). The subject was complicated. The defendants' cross-examination of the expert was instructive and demonstrated that Massbank's chance of qualifying for Subchapter S status was at least greater than zero. In a sense, the relevant but complicated provisions governing Massbank's prospects of attaining Subchapter S status were like the law of another jurisdiction whose proof in certain situations can be established by expert testimony. See *Lennon* v. *Cohen*, 264 Mass. 414, 421 (1928). The defendants make no point that the expert's opinion of the law was wrong or any different from what the judge would have told the jury about Subchapter S if the judge had assumed the role of defining the relevant tax law to the jury. The judge had discretion in this matter, and, in any event, there was no prejudice.[8]

3. The defendant Buchanan challenges an order, entered in response to a postjudgment motion of the plaintiffs, enjoining Buchanan from transferring, encumbering, or otherwise alienating his shares of stock in Massbank, Charterbank, and two corporations incorporated in other States. Buchanan ar-

---

*setts Port Auth.*, 361 Mass. 714, 716 (1972). We, therefore, reject the defendants' argument that the evidence does not support the verdict.

[8] The judge did err, over clear objection, in telling the jury that, in deciding whether the proposed reverse stock split had a legitimate business purpose, they could consider whether the reverse stock split "accomplished a legitimate" business purpose. If the business purpose was legitimate, a failure to attain it is not relevant to the issue of legitimacy. We have concluded that, as a matter of law, the defendants violated their fiduciary duty of fair dealing by failing properly to advise the minority stockholders of their rights. The business purpose issue, therefore, need not have been given to the jury, and any error in the course of doing so was not prejudicial.

gues that the Superior Court lacked statutory authority to grant an equitable attachment of the stock of a corporation incorporated in another State.

Pursuant to G. L. c. 223, § 86A (1988 ed.), any time after the entry of judgment in a plaintiff's favor (and even during the pendency of an appeal), the plaintiff may move to reach property of a defendant, within or without the Commonwealth, of the same kind as may be reached and applied under G. L. c. 214, § 3 (6) and (7) (1988 ed.). Buchanan argues that clause (6) does not authorize the equitable attachment of the stock of any corporation and that clause (7), which concerns reaching interests in corporate stock, applies only to stock of Massachusetts corporations (and corporations organized under the law of the United States) situated in Massachusetts.

Clause (6), in conjunction with G. L. c. 223, § 86A, appears on its face to authorize the order entered in this case. The plaintiffs, as judgment creditors, may seek to reach any property of Buchanan that cannot be attached in the normal course. The statutory pattern demonstrates unequivocally that judgment creditors like the plaintiffs have rights under § 3 (6).

Buchanan's principal argument is that clause (7) alone applies to reaching interests in corporate stock, and it does not include foreign corporations. In other words, the argument goes, for clause (7) to have any meaning, clause (6) must be read not to apply to corporate stock. We conclude, contrary to Buchanan's contention, that clause (6) properly applies to corporate stock and does not make clause' (7) superfluous. Clause (6) is only available to creditors, including judgment creditors, seeking payment or protection for the payment of a debt, including the dollar amount of a judgment. Under clause (7), in contrast, the party seeking protection need not be a creditor and the action need not be founded on a debt, but, on the other hand, the class of property that may be reached is limited to shares or interests in only certain corporations. Each clause serves a purpose, and our construction of

clause (6) does not make clause (7) a superfluous subset of clause (6).

4. The judgment dismissing the action purportedly brought under G. L. c. 156B by the Massachusetts Bank and Trust Company is affirmed. The judgment in the class action brought by Sullivan and Landis is vacated for the limited purpose of revising it to reflect the plaintiff class as of January 29, 1985 (not January 16, 1985). In all other respects that judgment is affirmed. The order authorizing the equitable attachment of certain stock owned by Buchanan is affirmed.

*So ordered.*