ROBERT J. SPENLINHAUER, executor,[1] vs. SPENCER PRESS, INC.,
& others.[2]

No. 10-P-2105.

Suffolk. September 12, 2011. - December 28, 2011.

Present: RAPOZA, C.J., COHEN, & AGNES, JJ.

*Corporation,* Close corporation, Merger, Stockholder, Stock, Valuation, Valua-
tion of stock. *Due Process of Law,* Adjudicatory proceeding. *Practice,
Civil,* Findings by judge. *Evidence,* Value. *Fiduciary. Conspiracy.*

In a civil action brought by a minority shareholder of a close corporation, aris-
ing out of the cash-out merger of the corporation with another corporation,
the judge correctly applied the appraisal provision of the Massachusetts
Business Corporation Act, G. L. c. 156D, § 13.30 (Act), in determining the
"fair value" of the minority stockholder's stock, where the Act does not
require a judge to follow any specific method for such a determination
[61-65]; further, the judge did not deprive the minority stockholder of due
process of law, where the judge plainly stated at a motion hearing that she
was going to proceed on the basis of evidence presented at the underlying
trial on related issues, unless the minority stockholder showed good reason
to do otherwise [65-67]; finally, the judge made the requisite findings of fact
and conclusions of law in her adjudication of the appraisal claim [67], and
the judge's determination of the stock's value was not clearly erroneous
[67-69].

In a civil action brought by a plaintiff executor of the estate of a minority share-
holder of a close corporation, arising out of the cash-out merger of the
corporation with another corporation, the judge properly granted summary
judgment in favor of the defendant majority stockholders on claims of
breach of fiduciary duty and conspiracy, where, as a matter of law, the
majority stockholders did not violate their duty of utmost good faith and
loyalty to the minority stockholder, who, because she had not participated
actively in the management of the corporation or received financial benefit
from her ownership of the stock for many years, had no reasonable expecta-
tion of benefit from ownership of the stock other than its fair value, which
her estate received as a result of the merger; and where, given that the
majority stockholders did not commit a breach of their fiduciary duties, they
could not have conspired to do so. [69-70]

---

[1]Of the estate of Georgia M. Spenlinhauer.

[2]Spencer Acquisition, Inc.; Stephen Spenlinhauer; and John E. Spenlinhauer,
III.

CIVIL ACTION commenced in the Superior Court Department on November 30, 2005.

Claims for breach of contract and misrepresentation were tried before *Judith Fabricant,* J., and a proceeding for equitable appraisal of stock was held before her.

*Philip M. Cronin* for the plaintiff.

*Stephen W. Rider* for the defendants.

AGNES, J. Under the Massachusetts Business Corporation Act (Act),[3] G. L. c. 156D, as appearing in St. 2003, c. 127, shareholders have the right to dissent from a proposed merger and demand that the corporation pay "fair value" for their shares if the merger is accomplished. G. L. c. 156D, § 13.02(*a*). The principal issue presented by this appeal is whether the trial judge correctly applied the appraisal provision of the Act, G. L. c. 156D, § 13.30, in determining the "fair value" of stock owned by a minority shareholder of a close corporation following a cash-out merger.[4] For the reasons that follow, we hold that the case law governing the determination of "fair value" under the predecessor law to the Act applies to the determination of "fair value" under § 13.30. We further conclude that the trial judge's decision to rely on evidence she heard during a jury trial involving other claims between the parties,[5] after providing the parties an opportunity to offer new evidence, was in compliance

[3]General Laws c. 156D became effective on July 1, 2004, and governs "all Massachusetts business corporations that are now governed by [G. L. c.] 156B . . . ." Comment to G. L. c. 156D, 25 Mass. Gen. Laws Ann. at 50-51 (West Supp. 2011). "The Act . . . was drafted by the Task Force on the Revision of the Massachusetts Business Corporation Law, which included more than fifty experienced Massachusetts corporate lawyers. . . . It is the first comprehensive revision of the Massachusetts law governing business corporations in approximately one hundred years and is based on, but not identical to, the American Bar Association's Model Business Corporation Act (2002). . . . The comments to the Act were prepared by the attorneys who drafted the Act and were intended to be a valuable tool in interpreting the Act." *Halebian* v. *Berv,* 457 Mass. 620, 625 (2010), citing comment to G. L. c. 156D, 25 Mass. Gen. Laws Ann. at 48 (West Supp. 2010).

[4]"All of the states and the District of Columbia have dissenters' rights statutes. Forty-six states use the 'fair value' standard or one of its iterations, exclusively. Only four states, California ('fair market value'), Louisiana ('fair cash value'), Ohio ('fair cash value') and Kansas ('value') use another term. The District of Columbia statute contains both 'fair value' and 'fair market value.' " *Matthew G. Norton Co.* v. *Smyth,* 112 Wash. App. 865, 873-874 (2002).

[5]As discussed *infra,* this appeal arises out of a lawsuit brought by the

with the Act and the constitutional rights of the minority share-holder. Finally, we hold that in the circumstances of this case, the judge's decision to appraise the value of the minority's shares as the pro rata percentage of the net selling price of the business was the "fair value" for those shares under the appraisal statute, G. L. c. 156D, § 13.30(*d*).

*Factual background.* Robert Spenlinhauer (Robert), acting as the executor of the estate of Georgia Spenlinhauer (estate), brought the present case against the defendants, Spencer Press, Inc. (Spencer Press), Spencer Acquisition, Inc., and their former majority owners, Stephen Spenlinhauer and John Spenlinhauer (collectively, defendants), based on a dispute regarding the valuation of the estate's one percent interest in Spencer Press, which Spenlinhauer was forced to sell as a result of the cash-out merger.

Spencer Press was founded in the 1940's by John E. Spenlinhauer, Jr. (John Jr.), and his wife, Georgia M. Spenlinhauer (Georgia), parents of the three brothers who are parties in this case. John Jr. owned ninety-nine percent of the stock and Georgia owned one percent. After the death of John Jr. in 1972, his three sons each owned thirty-three percent of the shares in Spencer Press, while Georgia retained her one percent share. In 1987, after disputes arose among the brothers, John and Stephen bought out Robert's stake in the company. Shortly thereafter, Georgia ceased active involvement in the business but remained a shareholder.

Georgia's health deteriorated in the late 1980's and early 1990's. Robert began taking care of her and in 1994, Georgia executed a new will, which left substantially all of her assets to Robert, including her share in Spencer Press. Robert was also named as the executor of her will.

In December of 2004, John and Stephen received from R.R. Donnelly & Sons, Inc. (Donnelly), a competitor, a preliminary offer to purchase Spencer Press. The price was $60 million, minus outstanding debts of around $30 million in addition to other company obligations and escrows. Stephen discussed the offer with Robert.

---

plaintiff, Robert Spenlinhauer (Robert), which included claims of breach of contract, breach of fiduciary duty, and conspiracy, as well as a claim for an appraisal of the "fair value" of the minority shares held by the plaintiff in the business entity owned and controlled by his two brothers who are defendants in this case.

On February 4, 2005, Georgia died. John initially wanted to contest Georgia's will, which he had not previously seen, but Stephen convinced him not to based on Robert's assurances that he would not obstruct the sale of Spencer Press and that he was satisfied with the estimated $350,000 he would receive as a pro rata share of the purchase price through the estate. However, in July of 2005, after the deadline for contesting Georgia's will had passed, Robert informed Stephen and John that he would not accept the pro rata share and instead demanded $3 million for the estate's one percent interest. Stephen was upset by Robert's actions, but nonetheless continued to negotiate the purchase of the estate's share. During the course of these negotiations, one of Stephen's attorneys informed Robert that Spencer Press could perform a cash-out merger under Massachusetts law to obtain the estate's interest without Robert's consent. Nevertheless, Stephen first offered Robert $500,000 and then $750,000 in exchange for the one percent share, but Robert rejected both offers.[6]

On October 5, 2005, Stephen and John completed a cash-out merger, whereby Spencer Press was merged into its recently formed parent company, Spencer Acquisition, Inc., which was subsequently renamed Spencer Press, Inc. On October 15, 2005, Robert was notified for the first time of this transaction; that the estate's share would be converted into $375,000; and of his rights under the Act. In November, 2005, the recently formed Spencer Press signed an agreement to sell its business to Donnelly.

*Procedural background.* On November 30, 2005, Robert brought the instant action, challenging several actions in the cash-out merger and sale. The parties agree that the defendants complied with the statutory requirements contained in G. L. c. 156D, § 11.05, in executing the cash-out merger. As required by G. L. c. 156D, § 13.30(*a*)[7], upon demand from Robert, the

---

[6]Stephen testified that he offered more than the pro rata value of the shares despite the availability of a cash-out merger in order to avoid a lawsuit.

[7]G. L. c. 156D, § 13.30(*a*), provides:

"If a shareholder makes demand for payment under section 13.26 which remains unsettled, the corporation shall commence an equitable proceeding within [sixty] days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest. If the corporation does not commence the proceeding within the [sixty]-day period, it shall pay in cash to each shareholder the amount the shareholder demanded pursuant to section 13.26 plus interest."

defendants filed a counterclaim for an equitable appraisal of the estate's stock and, inter alia, for intentional misrepresentation.

The parties conducted two years of discovery, which ended on December 31, 2007. The trial judge granted summary judgment in favor of the defendants on all of Robert's claims except his breach of contract claim. The appraisal claim brought by the defendants was stayed at Robert's request as executor until after a trial on Robert's breach of contract claim and the defendants' misrepresentation claim. A jury returned a verdict for the defendants on Robert's claim and for Robert on the misrepresentation claim.

After trial, the judge gave the parties an opportunity to comment on the procedure she should follow in adjudicating the appraisal claim,[8] and directed them to submit an offer of proof as to new evidence they would like to offer beyond what was presented at trial. In particular, the judge stated to counsel for Robert:

> "[I]f it's Mr. Marshall [plaintiff's expert] that you would be offering, . . . or something else, if there's some documents or some testimony, or whatever it is you might want to offer, I want to know what it is, and I'd like it in affidavit form or documentary form or some form beyond just a synopsis and a memorandum. The point to focus on I think is what should I do . . . as a procedural matter, other than simply mak[e] findings based on the evidence presented at trial, and why should I . . . do something other than just mak[e] findings."

The trial judge confirmed this request in an order dated August 7, 2009. The defendants responded by stating that they would rely on the evidence presented at trial. Robert, on the other hand, requested additional discovery without making an offer of proof that there was any new evidence.[9] The judge indicated that she

---

[8]The trial judge explained: "[W]e will proceed as the statute directs on the subject of appraisal. That leaves, I think, entirely for the Court to determine the question of how to go about it. One option being to appoint an appraiser, but I think a fully authorized option under the statute is for the Court to decide [the fair value of the share] either on the basis of the evidence already presented at trial before the jury on the claims that were tried to the jury, or on the basis of an evidentiary hearing before the Court, or on any other basis that the Court deems appropriate."

[9]In response to the judge's repeated requests for an offer of proof in connec-

had just completed a trial in which there was substantial evidence relating to the value of the stock of Spencer Press and the fairness of the purchase price, and in the absence of an offer of proof of any further evidence there was no reason to believe that the purchase price for the stock was "anything other than fair and favorable."[10] The judge concluded that the fair value of the estate's interest was one percent of the net sale price of Spencer Press to Donnelly.

*Discussion.* 1. *Appraisal procedure.* Robert claims that the trial judge violated the Act's appraisal provision, G. L. c. 156D, § 13.30, and deprived him of due process under the State and Federal Constitutions by not allowing an evidentiary hearing on his appraisal claim following the jury trial.

a. *Obtaining an appraisal.* When a subsidiary corporation is merged with its parent under G. L. c. 156D, § 11.05, a shareholder who is dissatisfied with the amount of the payment under G. L. c. 156D, § 13.26(*a*), is entitled to an equitable proceeding pursuant to § 13.30 to determine the "fair value" of his or her shares as defined by § 13.01. G. L. c. 156D, § 13.02(*a*). This was the procedure by which Spencer Press was merged with Spencer Acquisition, Inc., and the estate's appraisal rights were correspondingly triggered.

b. *Appraisal notice and form.* When corporate action is taken

---

tion with the demand for additional discovery, Robert identified four evidentiary items. First, he wanted to offer his own opinion of the stock's value. Compare *Menici* v. *Orton Crane & Shovel Co.*, 285 Mass. 499, 503 (1934) (lay witness familiar with value of property may offer opinion as to its value), with *Turner* v. *Leonard, Inc.*, 17 Mass. App. Ct. 909, 910-911 (1983) (lay witness not familiar with value of property not permitted to offer opinion as to value). Here, Robert's personal opinion of the value of the stock was already in evidence. Second, Robert wanted to offer evidence that during negotiations with the defendants, his brother Stephen had offered to pay him $500,000 and then $750,000 for his mother's stock. However, this evidence also was part of the evidentiary record at trial. Third, Robert wanted to offer evidence from a new expert witness, but only after an opportunity for additional discovery. The judge declined to reopen discovery in circumstances in which there was no indication of what the new expert witness would say. Fourth, Robert wanted to offer the stock purchase agreement between Spencer Press and Donnelly in order to make an argument based on a penalty clause in it. However, this agreement also was in evidence, and the argument had been raised.

[10]The evidence at trial included Robert's testimony at a pretrial deposition that the purchase price paid by Donnelly for Spencer Press ($60 million) was "a great price."

that triggers appraisal rights under G. L. c. 156D, § 13.02(*a*), the corporation must deliver a written appraisal notice and form to all shareholders who meet certain criteria within ten days after the corporate action. G. L. c. 156D, § 13.22(*a*), (*b*). In mergers between subsidiaries and parents pursuant to G. L. c. 156D, § 11.05, the parent company must deliver a written appraisal notice and form "to all record shareholders who may be entitled to assert appraisal rights." G. L. c. 156D, § 13.22(*a*). Such a notice must contain "the corporation's estimate of the fair value of the shares." G. L. c. 156D, § 13.22(*b*)(2)(iii). Depending on whether a shareholder certifies beneficial ownership of a share, the corporation must either pay shareholders or make an offer of payment. G. L. c. 156D, §§ 13.23, 13.24, 13.25. A shareholder "who is dissatisfied with the amount of the payment" may instead demand payment of the shareholder's own estimate of the fair value of the shares, plus interest. G. L. c. 156D, § 13.26(*a*).[11] If such a demand for payment remains unsettled, "the corporation shall commence an equitable proceeding" and "petition the court to determine the fair value of the shares and accrued interest." G. L. c. 156D, § 13.30(*a*). The parties followed these steps, which culminated in the appraisal proceeding that is the subject of the present appeal.

c. *Judicial appraisal proceedings.* Robert alleges that the judge violated the appraisal provision of the Act, which provides, in part, that:

> "The court may appoint [one] or more persons as appraisers to receive evidence and recommend a decision on the question of fair value. The appraisers shall have the powers described in the order appointing them, or in any amendment to it. The shareholders demanding appraisal rights are entitled to the same discovery rights as parties in other civil proceedings."

G. L. c. 156D, § 13.30(*d*).[12] The statute does not specify how to

_____

[11] "A shareholder entitled to appraisal rights under this chapter may not challenge the action creating his entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation." G. L. c. 156D, § 13.02(*e*). This is in keeping with prior law. See *Joseph* v. *Wallace-Murray Corp.*, 354 Mass. 477, 480 (1968) (applying G. L. c. 156B, § 82).

[12] "At common law, unanimous shareholder consent was a prerequisite to

conduct an appraisal, except that litigants must be afforded "the same discovery rights as parties in other civil proceedings." G. L. c. 156D, § 13.30(d). The statute permits, but does not require, the judge to appoint one or more appraisers.[13] The procedures followed by the trial judge did not violate the Act.

d. *Determining fair value.* The "fair value" of the shares being appraised is defined as "the value of the shares immediately before the effective date of the corporate action to which the shareholder demanding appraisal objects, excluding any element

---

fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted. See [Securities Exchange Commission] Report on the Work of Protective and Reorganization Committees, Part VII, pp. 557, 590." *Voeller* v. *Neilston Warehouse Co.*, 311 U.S. 531, 535 n.6 (1941). See generally Thompson, Exit, Liquidity, and Majority Rule: Appraisal's Role in Corporate Law, 84 Geo. L.J. 1, 11-12 (1995); Weiss, The Law of Take Out Mergers: A Historical Perspective, 56 N.Y.U. L. Rev. 624, 626-629 (1981); Wertheimer, The Shareholders' Appraisal Remedy and How Courts Determine Fair Value, 47 Duke L.J. 613, 615-616 (1998).

In the modern era, appraisal "exists only for fundamental changes and only for the subset of fundamental changes where 'uncertainty' about the fair value of the shares casts doubt on the fairness of the transaction." Thompson, The Case for Iterative Statutory Reform: Appraisal and the Model Business Corporation Act, 74 Law and Contem. Probs. 253, 267 (2011), quoting from Model Bus. Corp. Act Ann. § 13.01 comment at 1 (2008). Under this view, "[u]ncertainty is sufficiently reduced (for purposes of removing the need to provide shareholders this additional remedy [i.e., appraisal] beyond the usual protections provided by voting, gatekeepers, markets, et cetera) so long as shareholders can sell their shares in a market that is liquid and reliable . . . [l]iquidity is measured by the efficiency of the market; reliability is measured by the absence of conflict [of interest]." *Ibid.*, citing Model Bus. Corp. Act Ann. § 13.02 comment at 2 & 3 (2008).

[13]The plaintiff cites no authority for the view that G. L. c. 156D, § 13.30(d), requires the judge to appoint an appraiser. The statutory language states that "[t]he court may appoint [one] or more persons as appraisers to receive evidence and recommend a decision on the question of fair value." *Ibid.* See *Wiedmann* v. *The Bradford Group, Inc.*, 444 Mass. 698, 709-710 (2005) (in the construction of statutes, "may" is permissive and "shall" is mandatory). There is no case under the predecessor statute, G. L. c. 156B, that holds that an appraiser must be appointed by the court. Contrast G. L. c. 156, § 46 ("value shall be ascertained by three disinterested persons, one of whom shall be named by the stockholder, another by the corporation and the third by the two thus chosen"). See G. L. c. 79, § 7A (award of damages requires "at least one appraisal" unless this requirement is waived by the parties).

of value arising from the expectation or accomplishment of the proposed corporate action unless exclusion would be inequitable."[14] G. L. c. 156D, § 13.01. In keeping with the equitable nature of the proceeding, G. L. c. 156D does not require the judge to follow any specific method for the determination of "fair value." See G. L. c. 156D, § 13.30(*a*). This is in accord with the discretion judges have enjoyed under prior Massachusetts law.[15]

In general, in determining "fair value" under G. L. c. 156D, § 13.30(*d*), the judge "is not to reconstruct an 'intrinsic value' of each share of the enterprise but, rather, to determine what a willing buyer realistically would pay for the enterprise as a whole on the statutory valuation date." *BNE Mass. Corp.* v. *Sims*, 32 Mass. App. Ct. 190, 197 (1992) (citation omitted). "[T]ypically, in an appraisal . . . the price the corporation must pay for minority shares is fair value determined, as the judge did here, by finding the value represented by all the shares and

---

[14]There was no express definition of "fair value" in the predecessor statute, G. L. c. 156B.

[15]See, e.g., *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 734 (1979) (judge was not required to assign a specific weight to market value or to rely exclusively on net asset value but, instead, "the judge was acting within an acceptable range of discretion in selecting the weights he gave to the various factors"); *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 549 (1986) ("Where a stock is not regularly traded on a recognized exchange and there is no established market, the judge cannot use market value as a reliable indicator without reconstructing a hypothetical market value. Reconstruction of a more accurate hypothetical market value may be no more than a duplication of the judge's work in evaluating other factors, and he is not obliged to attempt a market value reconstruction"); *Chokel* v. *First Natl. Supermkts., Inc.*, 421 Mass. 631, 641 (1996) (describing the "Delaware block" method for valuing corporate shares which "calls for a determination of the market value, earnings value, and net asset value of the stock, and then a weighing of each element of value to ascertain the fair value of the stock," while observing it "is an appropriate but not mandated approach to valuing stocks in Massachusetts"). See also *Sullivan* v. *First Mass. Financial Corp.*, 409 Mass. 783, 792 n.7 (1991).

*Piemonte, Sarrouf, Chokel,* and *Sullivan* involve the interpretation of G. L. c. 156B, the predecessor to G. L. c. 156D. However, the drafters' comment to G. L. c. 156D, § 13.01, makes it clear that the definition of "fair value" in G. L. c. 156D "is primarily based upon [§ 92 of G. L. c. 156B]" and "leaves untouched the accumulated case law about what constitutes fair value." Comment 3 to G. L. c. 156D, § 13.01, 25A Mass. Gen. Laws Ann. at 4 (West Supp. 2011).

apportioning pro rata." *Shear* v. *Gabovitch*, 43 Mass. App. Ct. 650, 677 (1997).[16] When expert witness testimony is offered by one or more parties, as in this case, the judge may credit the valuation method utilized by an expert witness or reject it and rely on another reasonable method. See *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 863 (1989).

2. *Constitutional challenge.* The appraisal proceedings also did not violate Robert's right to due process under art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States. Due process fundamentally requires "notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Matter of Angela*, 445 Mass. 55, 62 (2005), quoting from *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965).

---

[16]The Massachusetts approach to the determination of "fair value" is consistent with the position taken by the American Law Institute and the national trend of interpreting "fair value" as the proportionate share of a going concern "without any discount for minority status or, absent extraordinary circumstances, lack of marketability." American Law Institute, Principles of Corporate Governance: Analysis and Recommendation, § 7.22(a) (1994) (ALI Principles of Corporate Governance). The comments further provide that the trial judge must determine the aggregate value of the firm as an entity, and then allocate that value pro rata in accordance with the shareholders' percentage of ownership. *Id.* at § 7.22 comment d. Accord *Weinberger* v. *UOP Inc.*, 457 A.2d 701, 713 (Del. 1983) (rejecting a formulaic use of the Delaware block method of valuation in favor of the weighing of all relevant factors involving the value of a company); *Shawnee Telecom Resources, Inc.* v. *Brown*, 354 S.W. 3d 542, 558 (Ky. 2011) ("[W]e find a broad consensus among courts, commentators, and the drafters of the Model Act that 'fair value' in this context is best understood, not as a hypothetical price at which the dissenting shareholder might sell his or her particular shares, but rather as the dissenter's proportionate interest in the company as a going concern"). *Valuation of Common Stock of McLoon Oil Co.*, 565 A.2d 997, 1005 (Me. 1989) ("[I]n fixing the appraisal remedy in a close corporation, the relevant inquiry is what is the highest price a single buyer would reasonably pay for the whole enterprise, not what a willing buyer and a willing seller would bargain out as the sales price of a dissenting shareholder's shares in a hypothetical market transaction. Any rule of law that gave the shareholders less than their proportionate share of the whole firm's fair value would produce a transfer of wealth from the minority shareholders to the shareholders in control. Such a rule would inevitably encourage corporate squeeze-outs" [footnote omitted]).

This case does not present an appropriate occasion to consider whether the essentially equitable nature of an appraisal proceeding under G. L. c. 156D, § 13.30(*d*), permits or requires a discount, in exceptional circumstances, as expressed by the ALI.

Robert alleges that he was given constitutionally insufficient notice of how the appraisal would proceed. In particular, he argues that the trial judge did not indicate what procedure she would follow or that she would rely on evidence presented at the jury trial. However, the trial judge plainly stated at the motion hearing on August 7, 2009, that she was going to proceed on the basis of evidence presented at trial, unless Robert showed good reason to do otherwise.[17] Robert's claim that he was given constitutionally insufficient notice is thus belied by the record.

Robert also asserts that the appraisal proceeding itself violated his right to due process. "Due process does not require any particular type of hearing, and 'many matters can lawfully — and satisfactorily — be heard on the papers.' " *Demoulas* v. *Demoulas*, 428 Mass. 555, 589 (1998), quoting from *EEOC* v. *Steamship Clerks Union, Local 1066*, 48 F.3d 594, 608 (1st Cir.), cert. denied, 516 U.S. 814 (1995).[18] Much like the plaintiff contended in *Demoulas*, Robert claims that his due process rights were violated because he did not have the opportunity to conduct additional discovery and present additional evidence on the appraisal claim at an evidentiary hearing. However, both Robert and the defendants presented evidence which pertained to the valuation of the stock at the summary judgment proceedings and at trial. When the trial judge gave Robert the opportunity to submit an offer of proof for the appraisal claim, he failed to identify any evidence that he would present beyond that which was offered at trial.[19] In addition, Robert did not submit any affidavits or documentary evidence in support of his offer of proof, as the trial judge specifically requested. As in *Demoulas*, the trial judge acted properly and constitutionally in

---

[17]The judge additionally stated that "[t]he point to focus on [in the memoranda the parties submitted] I think is what should I do . . . as a procedural matter, other than simply mak[e] findings based on the evidence presented at trial, and why should I do it."

[18]In *Demoulas*, following a trial on the merits, the judge requested "detailed proposals" to assist her in determining the best remedy. *Id.* at 589. The defendants did not supply such proposals, but instead repeatedly requested evidentiary hearings. *Id.* at 589-590. The Supreme Judicial Court was "hard pressed to find any unfairness in the manner in which the issue of relief was handled in view of the defendants' failure to provide requested information or to assist the judge in any meaningful way." *Id.* at 590.

[19]See note 9, *supra*.

ruling on the appraisal claim without an additional evidentiary hearing where Robert failed to comply meaningfully with the judge's requests to indicate what new evidence he would present at such a hearing.

3. *Judge's decision.* Robert argues that the trial judge failed to make required findings of fact and conclusions of law in her summary adjudication of the appraisal claim. Under Mass. R.Civ.P. 52(a), as amended by 423 Mass. 1402 (1996), "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon." This rule "does not require extensive detail, but does impose on the judge an independent duty to articulate the essential grounds of [her] decision." *Leader* v. *Hycor, Inc.*, 395 Mass. 215, 224 (1985), quoting from *Schrottman* v. *Barnicle*, 386 Mass. 627, 638 (1982). Here, the trial judge stated, on the record, that her decision was based on the evidence presented at the trial of the contract claim; specifically addressed arguments made by Robert; and concluded that the fair value of the estate's stock was one percent of the net sale price. Accordingly, the trial judge satisfied the requirements of rule 52(a).

4. *Determination of "fair value" of stock.* Robert also claims that the trial judge erred in determining that the fair value of the estate's stock was a one percent pro rata share of the net sale price of Spencer Press. See *Shear* v. *Gabovitch*, 43 Mass. App. Ct. at 677. Valuation is a question of fact that is reviewed only for clear error. See *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 550 (1986); *Chokel* v. *First Natl. Supermkts., Inc.*, 421 Mass. 631, 641 (1996); *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 541 n.47 (1997). The judge's "decision imports every fact essential to sustain it if there is evidence to support it." *Mailer* v. *Mailer*, 390 Mass. 371, 373 (1983).

As noted, G. L. c. 156D, § 13.30(*d*), does not specify the valuation method that the judge must use and should be interpreted in a manner that is consistent with existing decisional law.[20] This is in accord with the consensus of courts in other jurisdictions acting under comparable appraisal statutes that the minority shareholder receives its proportionate share of a going

---

[20] See notes 15 and 16, *supra*.

concern without artificial discounts.[21] Robert argues that the judge erred because she oversimplified the appraisal determination and undervalued the "fair value" of the minority shareholder's stock by basing it exclusively on the pro rata share of the net sale price. While it is true that, in a close corporation that is not insolvent, factors other than the net sale price may be significant in assessing its value, in the absence of any credible evidence of such factors offered by the minority shareholder, the pro rata share of the net sale price is "fair value." See *Sarrouf, supra* at 544 (the value of a "going concern . . . is the price a knowledgeable buyer would pay for the entire corporation").

The evidence that was relevant to the factual question of "fair value" presented during the jury trial included a certification filed by Robert with the Probate and Family Court five months after his mother's death (and while this litigation was pending) in which he declared that the value of his mother's one percent stockholding was $377,000. At his pretrial deposition, Robert testified that the purchase price paid by Donnelly was "a great price." Although Robert testified at trial that in his opinion his mother's stock was worth "at least one million dollars," none of the evidence presented at trial indicated that the fair value was anything other than one percent of the net sale price. The judge was warranted in concluding that the $60 million sale price paid by Donnelly for Spencer Press as a going concern was arrived at as a result of an arm's-length transaction. Moreover, the testimony of Philip Taub of Nixon Peabody, LLC, about the adjustments and deductions made from the purchase price established the net value of all the shares as $36 million.[22]

Since the parties in this case were afforded the opportunity to

---

[21]The comment to G. L. c. 156D states that "it is particularly desirable that corporate statutes converge in the light of rapidly developing methods of communication that have resulted in business entities engaging in transactions throughout the United States and the world. Among other things, as the courts of other jurisdictions interpret the [revised model business corporation act] as adopted in their states, those interpretations should be given significant weight in the interpretation of the Massachusetts courts of identical or comparable provisions of the Act." Comment to G. L. c. 156D, § 1.50, 25 Mass. Gen. Laws Ann. at 67 (West Supp. 2011).

[22]Taub testified, inter alia, that the adjustments were reasonable, made in good faith, reviewed and approved by certified public accountants, and, where appropriate, supported by independent appraisals. There was no evidence

engage in discovery on all of their claims prior to the stay of the appraisal claim, the judge was warranted in concluding that Robert's discovery rights under G. L. c. 156D, § 13.30(*d*), had been satisfied, and that "there is not and will not be anything to indicate that the overall purchase price being paid for all of the stock is anything other than fair and favorable." Accordingly, the judge was warranted in concluding that the "fair value" of the estate's one percent stock interest in Spencer Press at the time of the merger was $361,540 and that the estate had already been paid that amount.

While Robert cites a variety of factors that may be considered in assessing the fair value of shares, with two exceptions, he does not give any reason why the judge should have used them in this case. Robert only substantively asserts that the estate's one percent interest is worth more than its pro rata share because it would give either Stephen or John a controlling interest in the company; and the purchase of the share was necessary in order to sell one hundred percent of the stock to Donnelly. Both of these arguments pertain to the value of the estate's stock to Stephen or John, rather than the fair value of the stock as a pro rata share of the net value of the business. Thus, Robert has not shown that the trial judge's valuation determination was clearly erroneous.[23]

5. *Breach of fiduciary duty and conspiracy claims.* Robert further claims that the trial judge erred in granting summary judgment on his claims for breach of fiduciary duty and conspiracy. A grant of summary judgment is reviewed de novo, with all facts construed in favor of the nonmoving party. *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). Robert, in essence, argues that the fiduciary duties owed to shareholders in a close corporation entitled the estate to notice of the cash-out merger before it

---

presented at trial that contradicted this testimony. Robert's assertion, without any detail or backing evidence, that the deductions made from the gross sale price of Spencer Press were improper is without merit.

[23]See *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977) ("In deciding whether a judge's subsidiary finding of fact is clearly erroneous, it must be emphasized that it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence. Thus, a finding of fact by the trial judge will not be deemed 'clearly erroneous' unless the reviewing court on the entire evidence is left with the firm conviction that a mistake has been committed" [citation omitted]).

happened, which is sooner than the estate received notice pursuant to G. L. c. 156D, § 13.02.

Stockholders in a close corporation owe each other a duty of utmost good faith and loyalty. *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 593 (1975). Majority shareholders violate this duty when they frustrate the minority's "reasonable expectations of benefit from their ownership of shares." *Brodie* v. *Jordan*, 447 Mass. 866, 869 (2006) (illustrating so-called "freeze-out" techniques). Georgia had not participated actively in the management of the corporation or received financial benefit from her ownership of the stock for approximately eighteen years. Thus, she had no reasonable expectation of benefit from ownership of the stock other than its fair value, which the estate received as a result of the cash-out merger. Robert's personal expectations of benefit are irrelevant, as he controlled the stocks only as fiduciary of the estate. See *Lathrop* v. *Merrill*, 207 Mass. 6, 10 (1910). Accordingly, the trial judge did not err in concluding that the defendants were entitled to judgment as a matter of law on Robert's claim for breach of fiduciary duty.[24]

Similarly, the trial judge did not err in finding that the defendants were entitled to judgment as a matter of law on Robert's claim for conspiracy because he had not proved an independent basis for tort liability and did not allege coercion. See *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 188-189 (1998) (civil conspiracy requires either independent tort liability or coercion). Robert's claim that the defendants conspired to commit the tort of breach of their fiduciary duties fails because the defendants did not breach their fiduciary duties.

*Amended judgment affirmed.*

---

[24]Viewing the evidence in the light most favorable to the nonmoving party, the trial judge was correct in concluding that there were no material facts in dispute and that Stephen did not make offers to buy Robert's stock that he did not intend to keep. For this reason, Robert's argument based on "false offers of settlement" is without merit.