Singh, J.
Landlord Ester Flores (“landlord”) brought this eviction action against her tenant, Catherine Castaldi (“tenant”), for failure to vacate after notice to quit. The tenant counterclaimed for breach of the lease, breach of quiet enjoyment, breach of the warranty of habitability, retaliation, disability discrimination, and violation of the consumer protection act, G.Lc. 93A. After trial, the court determined that neither party had met her burden and dismissed all claims. Only the tenant has appealed.
The parties entered into a landlord-tenant relationship in November, 2009. During the course of the relationship, the tenant made various complaints about her unit, and the landlord attempted to resolve them. For example, when the tenant complained about her refrigerator and stove, the landlord replaced them. The landlord engaged a professional exterminator when the tenant complained about bedbugs. When the tenant complained of a ceiling deteriorated by water leakage, the landlord repaired the ceiling and compensated the tenant for property damaged as a result of the leaking.
In addition to complaints about the unit itself, the tenant complained about the noise made by her upstairs neighbors, also tenants of the landlord.[1] The upstairs neighbors also complained to the landlord about the tenant, specifically about being disturbed by constant police involvement at all hours of the day and night. Due to the tenant’s calls, the police visited the upstairs neighbors to investigate noise complaints made in the middle of the day, during breakfast and lunch times. The police would also repeatedly visit the tenant’s premises in the middle of the night to investigate incidents of domestic disturbances. In the more than ten years that the landlord owned the house, she never had cause for the police to visit; however, in the two years that the tenant lived there, the police visited forty times. Every call to the police was made by the tenant.[2]
*122 In May, 2011, the landlord sent the tenant a thirty-day notice to quit, indicating that she needed the apartment for a relative. Nevertheless, the tenant remained on the premises.
The landlord filed this eviction action in court in July, 2011. The tenant answered and counterclaimed. After a period of discovery, the parties engaged in a jury-waived trial over the course of two separate days in September, 2011. On October 20,2011, the judge issued “Findings of Fact, Rulings of Law and Final Judgment,” which awarded possession and back rent to the landlord, discounted by $1,000.00, representing the tenant’s damages on her counterclaims. The tenant then moved for relief from judgment, which was heard on November 3, 2011. The following day, the judge issued “Amended Decision on the Tenant’s Motion for Relief from Judgment,” acknowledging that he had made certain errors and indicating that he was therefore vacating his earlier “Findings of Fact, Rulings of Law and Final Judgment,” and continuing the matter to take additional evidence on specific points. On November 17, 2011, the parties were given the opportunity to present additional evidence. The judge’s “Findings of Fact, Rulings of Law and Final Judgment” were entered on April 10,2012. In this final memorandum of decision, the judge dismissed the complaint, finding that the landlord had not terminated the tenancy for good cause as required by the parties’ agreement As to the various counterclaims, the judge found that the tenant had failed to meet her burden of proving either the claims or any damages resulting therefrom.
The tenant now appeals on the bases that the judge (1) relied on excluded evidence in making critical findings concerning her claims for retaliation and quiet enjoyment, (2) misapplied the law with respect to her claim of retaliation and (3) made inconsistent findings with respect to her claim for breach of the warranty of habitability.
1. Reliance on Excluded Evidence.
The landlord had sought to introduce certain letters from the upstairs neighbors complaining about the tenant, but the tenant objected on the ground of hearsay. The judge excluded the letters, but later detailed their contents in his decision, concluding that the tenant’s conduct was disruptive to others who lived on the property.
During the hearing on her motion for relief from judgment, the tenant’s counsel pointed out this discrepancy to the judge, stating: “In addition, in your Findings you cited two letters that were in this booklet that [the landlord] gave you... and I objected to them and they were excluded as hearsay....” The judge explained, “There were the police reports, however. So I left that in for that reason.” The police reports referenced by the judge constituted an exhibit that was offered by the landlord and accepted into evidence at trial, but was not provided by the tenant to this Division on appeal. Donovan v. Mahoney, 2012 Mass. App. Div. 4, 5 (appellant’s burden to prepare and furnish adequate trial court record for review on appeal). See also Arch Med. Assocs., Inc. v. Bartlett Health Enterp., Inc., 32 Mass. App. Ct. 404, 406 (1992). As the information in the excluded letters may well have been relayed in the police reports that were admitted into evidence,[3] we cannot say that the judge improperly *123 relied on excluded evidence. In any event, the tenant herself testified to making numerous complaints about her neighbors to the landlord as well as to the police. She also detailed the police involvement at her property for other reasons relating to her family and other personal issues. The landlord was also able to testify, without objection, that she received complaints from the upstairs neighbors regarding what they believed was harassing conduct of the tenant. Thus, the judge had before him ample other evidence to support his conclusion that the tenant’s conduct was disruptive to others.
2. Application of Law on Retaliation.
The tenant also appeals the judge’s determination that she failed to establish her claim of retaliation. She correctly notes that she was entitled to a rebuttable presumption of retaliation because the landlord’s notice to quit came within six months of the tenant’s exercise of her right to complain about the conditions at her premises. See G.L.c. 186, §18. At that point, the burden shifted to the landlord to prove, by clear and convincing evidence, that her decision to evict the tenant was not retaliatory. Id. The tenant argues that the judge erroneously shifted that burden from the landlord to the tenant, relying on employment law. Although the judge did analogize to employment law cases, he did not improperly shift the burden of proof. To the contrary, he made explicit note of the statutory presumption in favor of the tenant’s claim of retaliation, but he went on to find that the landlord had met her burden of rebutting that presumption by establishing that her decision to terminate the tenancy was based on the tenant’s “escalating and unreasonable demands, as well as her conduct that disrupted others’ use of the Premises.”
The tenant argues, however, that this finding of nonretaliatory eviction is inconsistent with the judge’s determination that the landlord did not have good cause for terminating the tenancy. The two findings are not mutually exclusive. The judge did find that the landlord did not have good cause for terminating the tenancy, but only in the sense that the landlord’s stated reason in the notice to quit — the need to give the apartment to a family member — was not the true reason. It does not necessarily follow that the true reason for the eviction was to retaliate against the tenant for the exercise of her legitimate right to seek redress for her living conditions. As found by the trial judge, the true reason for the eviction was the tenant’s escalating and unreasonable demands,[4] coupled with the tenant’s conduct, which caused friction with the upstairs neighbors. There was ample evidence at trial supporting this finding.[5] See Lily Transp. v. Royal Institutional Servs., Inc., 64 Mass. App. Ct. 179, 181 (2005) (judge’s findings of fact not to be set aside unless clearly erroneous). Accord Mass. R. Civ. P., Rule 52(a).

*124
3. Inconsistent Findings on Damages.

Finally, the tenant argues that the judge’s finding that she was not entitled to any damages was inconsistent with his earlier finding that she was entitled to a $1,000.00 abatement in rent due to the landlord’s breach of the warranty of habitability. There is no inconsistency. Upon consideration of the tenant’s motion for relief from judgment, the judge vacated his earlier decision, acknowledging that he “made findings which were not correct.” He was therefore free to reassess the evidence and determine, as he did, that the tenant was not entitled to any damages. Nagle v. Regan, 12 Mass. App. Ct. 906 (1981) (“judge has a right and even a duty to change his mind about the facts or the law when there is no bar in law to his doing so and he is convinced that his view of either is erroneous.”). Although the tenant presented evidence in support of her claim that the landlord had breached the warranty of habitability, the judge was free to reject it or to determine that the issues complained of did not rise to the level of breach. Spenlinhauer v. Spencer Press, Inc., 81 Mass. App. Ct. 56, 69 n.23 (2011).
Judgment affirmed.
So ordered.

 Despite the numerous complaints made by the tenant about her upstairs neighbors, there was no evidence from any source, other than the tenant, that the neighbors were excessively noisy or in violation of any noise ordinance.

 All of this evidence concerning disturbances at the property and friction between the tenant and her upstairs neighbors was admitted at trial without objection.

 Although the defendant objected to the introduction of the police reports, it was not on the basis of hearsay, but rather on the ground that the documents were not certified. The letters were offered by the landlord, in response to the tenant’s counsel’s cross-examination of her where he challenged her testimony that the police visited the premises many times.

 Although the judge did not enumerate these demands, the landlord testified that the tenant texted and called her “every five minutes for any reason.” The tenant even admitted to calling the landlord to complain “on a daily basis.”

 The tenant also attempts to undermine this finding by pointing out that the parties agreed to reinstate the lease in October, 2010, months after the friction with the upstairs tenants began. As this was also months after the tenant made numerous complaints about the premises to outside authorities, the reinstatement of the lease does not tend any more towards a conclusion of retaliation than nonretaliation.