JOHN HALEBIAN *vs.* ELLIOT J. BERV & others.[1]

Suffolk. May 4, 2010. - August 23, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Corporation,* Stockholder's derivative suit, Business judgment rule. *Statute,* Construction.

Discussion of the legislative history of the Business Corporations Act, G. L. c. 156D, and its provisions governing shareholder derivative actions in particular. [624-627]

This court concluded that a shareholder derivative action must be dismissed under the business judgment doctrine, as established in G. L. c. 156D, § 7.44, following a corporation's independent determination, made in good faith and after reasonable inquiry, that maintenance of the derivative proceeding is not in the best interests of the corporation, regardless of whether the derivative complaint has been filed before or after the corporation's rejection of the shareholder's demand. [627-633]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States Court of Appeals for the Second Circuit.

*Joel C. Feffer,* of New York (*Michelle H. Blauner* with him) for the plaintiff.

*James S. Dittmar* (*Michael K. Isenman,* of the District of Columbia, with him) for the defendants.

*Ben Robbins & Martin J. Newhouse,* for New England Legal Foundation, amicus curiae, submitted a brief.

*John D. Donovan, Jr., & Heather B. Sanborn,* for The Co-Chairs of the Task Force on the Revision of the Massachusetts Business Corporation Law, amicus curiae, submitted a brief.

GANTS, J. The United States Court of Appeals for the Second

[1]Donald M. Carlton, A. Benton Cocanougher, Mark T. Finn, Stephen Randolph Gross, Diana R. Harrington, Susan B. Kerley, Alan G. Merten, R. Richardson Pettit, and Citifunds Trust III. At the time of the events giving rise to the complaint, the individual defendants were members of the board of trustees (board) of Citifunds Trust III (Trust).

Circuit (Second Circuit) has certified to us, pursuant to S.J.C. Rule 1:03, as amended, 382 Mass. 700 (1981), the following question of State law:

> "Under Massachusetts law, can the business judgment rule, established under Mass. Gen. Laws ch. 156D, § 7.44, be applied to a derivative complaint filed timely under section 7.42 but prior to a corporation's rejection of the demand that serves as the basis for the suit?"

*Halebian* v. *Berv*, 590 F.3d 195, 214 (2d Cir. 2009). For the reasons we discuss below, the answer to the certified question is "Yes."[2]

1. *Background.* The background of the case set forth below is drawn from the relevant facts as found by the District Court judge, see *Halebian* v. *Berv*, 631 F. Supp. 2d 284 (S.D.N.Y. 2007), and relied on by the Second Circuit. The nominal defendant, Citifunds Trust III (Trust), is an open-ended investment company, organized as a business trust under Massachusetts law, comprised of six separate mutual funds, each with a separate investment portfolio and separate shareholders (funds). The plaintiff alleges that he is a shareholder in one of the mutual funds. The individual defendants are members of the board of trustees (board) of the Trust.

An affiliate of Citigroup, Inc. (Citigroup), originally served as investment advisor to each of the funds. In June, 2005, Citigroup entered into an agreement to sell substantially all its asset management businesses, including the affiliate that served as investment advisor to each of the funds comprising the Trust, to Legg Mason, Inc. (Legg Mason). Under the Investment Company Act of 1940 (ICA), 15 U.S.C. §§ 80a-1 et seq. (2006), this transaction resulted in the automatic termination of the investment advisory agreements between the funds and the Citigroup investment advisor, and required the funds to enter into new investment advisory agreements either with the transferred entity now owned by Legg Mason or with some other qualified investment advisor. See 15 U.S.C. § 80a-15. The ICA requires that

---

[2]We acknowledge the amicus briefs submitted by the New England Legal Foundation and by the cochairs of the Task Force on the Revision of the Massachusetts Business Corporation Law.

any new investment advisory agreement be approved by a majority of disinterested trustees and by a vote of a majority of the outstanding shares of the fund to which the agreement relates. See 15 U.S.C. § 80a-15(a), (c). In August, 2005, the board approved new investment advisory agreements with the transferred investment advisor, now an affiliate of Legg Mason, that contained essentially the same terms as the prior investment advisory agreements and sent a proxy statement describing the new agreements to shareholders in the funds. The proxy statement recommended approval of the new agreements, and the shareholders voted to approve them.

On February 8, 2006, the plaintiff wrote a demand letter to the board in which he claimed that, in approving new investment advisory agreements that duplicated the terms of the earlier agreements without seeking competing bids from other firms or without attempting to improve on the terms of the former agreements, the board had committed a breach of its fiduciary duty by placing Citigroup's interests in completing the transaction with Legg Mason before those of the funds.[3] The letter demanded that the board institute an action for breach of fiduciary duty against the trustees and officers responsible for the board's actions in approving and recommending the new advisory agreements. The board acknowledged receipt of the plaintiff's demand letter and advised him that it had created a special committee of independent trustees to consider his demand. On May 30, 2006, more than ninety days after the date of his original demand letter, having received no definitive response from the board to his formal demand, the plaintiff filed suit against the defendants in Federal court. All parties agree that the first claim in the complaint, which alleges that the trustees breached their fiduciary duty in approving and recommending the new advisory agreements, was derivative in nature. By resolution dated July 12, 2006, six weeks after the filing of the plaintiff's complaint, the board rejected the plaintiff's demand that it bring suit against the trustees on this claim by formally declining to institute

---

[3]The plaintiff claimed that the board members of the Trust, had they refused to accept the same investment advisory agreements, could have blocked the sale of the Citigroup investment advisor to Legg Mason, and that they should have used this "blocking position" to negotiate lower investment fees.

action against any of its members and directing its counsel to move to dismiss the claim.

Under the Massachusetts Business Corporations Act (Act), G. L. c. 156D, derivative proceedings are governed by statute. See G. L. c. 156D, §§ 7.40-7.47. In ruling on the defendants' motion to dismiss, the District Court judge was required to interpret and apply G. L. c. 156D, § 7.44 (*a*), of the Act, which governs the dismissal of a derivative complaint on motion of the corporation.[4] Section 7.44 (*a*) provides:

> "A derivative proceeding commenced after rejection of a demand shall be dismissed by the court on motion by the corporation if the court finds that either: (1) 1 of the groups specified in subsections (*b*) (1) or (*f*) has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation[5]; or (2) shareholders . . . have determined that the maintenance of the derivative proceeding is not in the best interests of the corporation."[6]

*Id.* The defendants claimed that, because the corporation had reached its decision to reject the plaintiff's claim by a vote of the independent directors following a good faith inquiry, the corporation was entitled to dismissal under § 7.44 (*a*). The plaintiff contended that, according to its terms, the statute provides for dismissal only where a suit is "commenced *after rejection of a demand*" (emphasis added). Because he commenced this suit *before* the board's rejection of his demand, the plaintiff argued, the statute did not apply, and dismissal was not authorized.

---

[4]Because a business trust "in practical effect is in many respects similar to a corporation," *Swartz* v. *Sher*, 344 Mass. 636, 639 (1962), the statute regulating derivative actions applies to a shareholder bringing such a claim against a corporation or a business trust. See *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005).

[5]Subsection (*b*) (1) permits this determination to be made by a majority vote of independent directors present at a meeting of the board of directors if the independent directors constitute a quorum. Subsection (*f*) permits the determination to be made by a panel of one or more independent persons appointed by the court on a motion by the corporation. G. L. c. 156D, § 7.44 (*b*) (1), (*f*).

[6]The determination of the shareholders is made by "the vote of the holders of a majority of the outstanding shares entitled to vote." G. L. c. 156D, § 7.44 (*a*), (*b*) (3).

The District Court judge dismissed the claim. Reading § 7.44 (*a*) in light of related provisions of the Act as well as the comments of the drafters of the statute, the judge held that § 7.44 (*a*) requires dismissal where a board has rejected a plaintiff's demand after a good faith review, whether that rejection precedes or follows the plaintiff's timely filing of a derivative complaint under G. L. c. 156D, § 7.42. *Halebian* v. *Berv*, 631 F. Supp. 2d 284, 295 (S.D.N.Y. 2007).[7,8]

On appeal, a three-judge panel of the Second Circuit expressed doubt about the interpretation of § 7.44 (*a*) adopted by the District Court judge. See *Halebian* v. *Berv*, 590 F.3d 195, 212 (2d Cir. 2009). Although it reserved judgment on the merits pending our response to its certified question, the court proffered its "best reading" of § 7.44, suggesting that the statute's explicit reference to claims "commenced after rejection of a demand," gives rise to the "negative implication" that § 7.44 (*a*) and its provision for dismissal do not apply to claims commenced *before* rejection of a demand. See *Halebian* v. *Berv*, *supra* at 212, 214.

The certified question essentially asks whether the Legislature intended that the provisions for dismissal under § 7.44 apply *only* to derivative proceedings that are "commenced after rejection of a demand," or to any derivative proceeding where a plaintiff shareholder's demand has been rejected by the corporation. We determine that the latter interpretation best comports with the apparent intent of the Legislature in adopting the Act.

2. *Discussion.* Before confronting the certified question, we consider the legislative history of the Act in general and its provisions governing derivative actions in particular. The Act, which became effective on July 1, 2004, St. 2003, c. 127, §§ 17, 24,

---

[7]The District Court judge noted that the plaintiff did not allege that the board members making the determination were not independent. Therefore, in answering the certified question, we assume that these trustees were independent for the purposes of G. L. c. 156D, § 7.44 (*b*) (1).

[8]The District Court judge also dismissed the two other claims of the complaint, concluding that they were derivative in nature but had not been included in the plaintiff's demand letter to the Trust, in violation of the Massachusetts Business Corporations Act's (Act's) universal demand requirement, G. L. c. 156D, § 7.42, which mandates that any shareholder seeking to bring a derivative claim must first make written demand on the corporation to take suitable action. See *Halebian* v. *Berv*, 631 F. Supp. 2d 284, 302-303 (S.D.N.Y. 2007).

was drafted by the Task Force on the Revision of the Massachusetts Business Corporation Law, which included more than fifty experienced Massachusetts corporate lawyers. Comment to G. L. c. 156D, 25 Mass. Gen. Laws Ann. at 48 (West Supp. 2010). It is the first comprehensive revision of the Massachusetts law governing business corporations in approximately one hundred years and is based on, but not identical to, the American Bar Association's Model Business Corporation Act (2002). *Id.* The comments to the Act were prepared by the attorneys who drafted the Act and were intended to be a valuable tool in interpreting the Act. *Id.*

The Act declares as a general principle of corporate governance that "[a]ll corporate power shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, its board of directors . . . ." G. L. c. 156D, § 8.01 (*b*). However, where a shareholder claims that a corporation's directors or officers have engaged in wrongdoing that has injured the corporation, the Act permits a shareholder, in certain circumstances, to initiate a civil suit on behalf of the corporation against the directors or officers. A suit brought in this manner to vindicate a right of the corporation is known as a derivative proceeding. See G. L. c. 156D, §§ 7.40 et seq. See also Mass. R. Civ. P. 23.1, 365 Mass. 768 (1974).

The Act imposes a universal demand requirement on shareholder derivative suits. Before a shareholder may file a derivative proceeding in court, the shareholder first must make a written demand on the corporation to take suitable action. G. L. c. 156D, § 7.42. After receipt of the shareholder's written demand, the corporation may accept the demand and assume control of the litigation, or reject the demand. See comment 4 to G. L. c. 156D, § 7.42, *supra* at 142. If the corporation accepts the demand, the shareholder's right to commence or control the proceeding ends unless the shareholder shows that the corporation has not adequately pursued the matter. See *id.* If the corporation rejects the demand, or fails to act within ninety days of the demand, the shareholder may commence the derivative proceeding and prosecute the action on his own.[9] G. L. c. 156D, § 7.42. See comments 3 & 4 to G. L. c. 156D, § 7.42, *supra* at 142. "The

---

[9]If the corporation, within sixty days of the date of demand, decides to put

[demand] rule is intended 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.' " Comment 4 to G. L. c. 156D, § 7.42, *supra* at 142, quoting *Lewis* v. *Graves*, 701 F.2d 245, 247 (2d Cir. 1983). This is consistent with the principles expressed in our case law prior to adoption of the statute. See *Harhen* v. *Brown*, 431 Mass. 838, 844 (2000) ("The rationale behind the demand requirement is that, as a basic principle of corporate governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit"). See also *S. Solomont & Sons Trust* v. *New England Theatres Operating Corp.*, 326 Mass. 99, 112-113 (1950). The ninety-day period was chosen as a "reasonable minimum" time for the board of directors to meet, direct the necessary inquiry into the charges, receive the results of the inquiry, and make their decision. Comment 3 to G. L. c. 156D, § 7.42, *supra.*

As noted, where a derivative proceeding is "commenced after rejection of a demand" by the board of directors, the statute directs a court to dismiss the complaint on motion by the corporation if the court finds that the shareholders or an appropriate group "has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation."[10] G. L. c. 156D, § 7.44 (*a*). Section 7.44 (*a*) identifies two nonshareholder groups whose reasonable determination will provide a basis for mandatory dismissal: a majority of the independent directors present at a meeting of the board of directors, if the independent directors constitute a quorum, see G. L. c. 156D, § 7.44 (*a*), (*b*) (1); and a panel of one or more

the question whether to accept or reject the demand to a vote of shareholders, the plaintiff must wait 120 days after the date of demand before filing the derivative proceeding in court, unless the shareholders earlier reject the demand. G. L. c. 156D, § 7.42 (2). In addition, if the shareholder can show that irreparable injury to the corporation would result by waiting for the expiration of the ninety-day or 120-day period, the shareholder may file the derivative proceeding before the expiration of the applicable statutory period. *Id.*

[10]Section 7.44(a) of the American Bar Association's Model Business Corporation Act (2002) does not include the phrase "commenced after rejection of a demand," which means that the Task Force that drafted the Massachusetts Act chose to add it.

independent persons appointed by the court on a motion by the corporation. G. L. c. 156D, § 7.44 (*a*), (*f*). The drafters' comments to § 7.44 and the Second Circuit's decision in this case both refer to such a dismissal as an application of the "business judgment rule." Comment 2 to G. L. c. 156D, § 7.44, *supra* at 148. See *Halebian* v. *Berv*, 590 F.3d 195, 214 (2d Cir. 2009). We think it is clearer to refer to this as an application of the business judgment doctrine incorporated in G. L. c. 156D, § 7.44.[11]

Section 7.44 makes no express provision for the dismissal of a derivative proceeding that is commenced *before* rejection of a demand, even though a derivative proceeding may be filed before such a rejection if the board has failed to act on the plaintiff's demand after ninety days or if the plaintiff has established that waiting for the board to act or for the expiration of the ninety-day period would result in irreparable injury to the corporation. See G. L. c. 156D, § 7.42 (2). The plaintiff contends that, as a result of this omission, a corporation that fails to act to reject a shareholder demand before the filing of a derivative complaint forfeits its entitlement to a dismissal under the business judgment doctrine. If the plaintiff is correct, a corporation in these circumstances may still seek dismissal of a derivative complaint on the ground of the plaintiff's lack of standing, G. L. c. 156D, § 7.41, or the complaint's failure to state a claim, Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), but not on the ground that the corporation has determined in good

---

[11]"The business judgment *rule* shields individual directors from liability for damages stemming from decisions, whereas the business judgment *doctrine* protects the decision itself" (emphasis in original). Hinsey, Business Judgment and the American Law Institute's Corporate Governance Project, 52 Geo. Wash. L. Rev. 609, 611-612 (1983-1984). See *Lamden* v. *La Jolla Shores Clubdominium Homeowners Ass'n*, 21 Cal. 4th 249, 257 (1999). Therefore, the statutory business judgment rule is set forth, as to directors, in G. L. c. 156D, § 8.30, and, as to officers, in G. L. c. 156D, § 8.42. The business judgment rule protects directors and officers from liability for conduct they have taken in good faith, with the care that a person in a like position would reasonably believe appropriate in similar circumstances, and in a manner the director or officer reasonably believes to be in the best interests of the corporation. In the context of a derivative proceeding, the business judgment doctrine protects a corporation's decision that prosecution of the claim demanded by the shareholder is not in the best interests of the corporation where the decision is made in good faith by independent decision makers after reasonable inquiry. G. L. c. 156D, § 7.44. See comments to G. L. c. 156D, § 7.44, 25 Mass. Gen. Laws Ann. at 147-148 (West Supp. 2010).

faith after reasonable inquiry that the best interests of the corporation would not be served by prosecution of the derivative complaint.

We now consider whether this is a reasonable interpretation of § 7.44. In interpreting a statute, "[w]e begin with the language of the statute." *Commonwealth* v. *Raposo*, 453 Mass. 739, 743 (2009). We give effect to each word and phrase in a statute, and seek to avoid an interpretation that treats some words as meaningless. See *Milford* v. *Boyd*, 434 Mass. 754, 757 (2001); *Commonwealth* v. *Super*, 431 Mass. 492, 497-498 (2000). We agree with the plaintiff and the Second Circuit that the inclusion of the phrase, "commenced after rejection of a demand," in § 7.44 (*a*) invites the "negative implication" that a corporation is not entitled to dismissal of a derivative proceeding under the business judgment doctrine where the corporation has failed to reject the plaintiff's demand before the filing of the complaint. However, the maxim of negative implication — that the express inclusion of one thing implies the exclusion of another — "requires great caution in its application." 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47.25, at 429 (7th ed. 2007). "It is universally held that this maxim is a guide to construction, not a positive command." *Massachusetts Trustees of E. Gas & Fuel Assocs.* v. *United States*, 312 F.2d 214, 220 (1st Cir. 1963), aff'd, 377 U.S. 235 (1964). "[T]he maxim will be disregarded . . . where its application would thwart the legislative intent made apparent by the entire act." 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction, *supra* at § 47.25, at 433-435. See *Brady* v. *Brady*, 380 Mass. 480, 484 (1980), quoting *Simmons* v. *County of Suffolk*, 230 Mass. 236, 237-238 (1918) ("the maxim is not to be followed where to do so would frustrate the general beneficial purposes of the legislation"). Accord *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975). Therefore, consistent with our general practice of statutory interpretation, we do not consider the language of the statute alone, but seek to determine the intent of the Legislature in enacting the statute, "ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or

imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

"Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction." *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009). The language in various other provisions of the Act, including language within § 7.44 itself, clearly indicates that the Legislature intended that a corporation should be entitled to dismiss a derivative proceeding under the business judgment doctrine regardless whether the corporation's rejection of the shareholder's demand precedes or follows the filing of the derivative suit. Beginning with the language of § 7.44 (*a*) itself, the sentence that contains the phrase in question states that a derivative proceeding shall be dismissed where a determination has been made in good faith after a reasonable inquiry by one of the specified independent groups that "the *maintenance* of the derivative proceeding is not in the best interests of the corporation" (emphasis added). G. L. c. 156D, § 7.44 (*a*). "Using the words in their ordinary significance 'maintain' carries a different meaning from 'institute' or 'begin,' and implies that an action must be begun before it can be maintained." *National Fertilizer Co.* v. *Fall River Five Cents Sav. Bank*, 196 Mass. 458, 460 (1907).[12] By speaking of the maintenance, rather than the initiation, of the derivative proceeding, the Legislature recognized that a corporation may reject a shareholder's demand *after* the derivative complaint has been filed in court, and that rejection of the demand may require dismissal of the complaint.

As noted earlier, § 7.44 also requires dismissal if the determination that "the maintenance of the derivative proceeding is

---

[12]The Legislature has clearly distinguished between the terms "commence" and "maintain" elsewhere in the Act. See G. L. c. 156D, § 7.41 ("A shareholder may not commence or maintain a derivative proceeding" without satisfying conditions governing standing). Where the Legislature employs two similar terms or phrases in the same statutory series, we are required to construe them differently if each is to have meaning. *81 Spooner Rd. LLC* v. *Brookline*, 452 Mass. 109, 114 (2008), and cases cited.

not in the best interests of the corporation" is reached by a panel of one or more independent persons appointed by the court on motion of the corporation. G. L. c. 156D, § 7.44 (*a*), (*f*). A corporation, however, cannot file the motion contemplated under § 7.44 (*f*) with a court unless the derivative proceeding has already commenced. It would therefore be impossible for the panel appointed by the court to reach a determination that the plaintiff's demand for suit should be rejected *before* commencement of the suit. If dismissal under § 7.44 under the business judgment doctrine applied only to derivative proceedings "commenced after rejection of a demand," the court's appointment of an independent panel under § 7.44 (*f*) would have no purpose: the determination of the panel, coming as it must after the commencement of the suit, would already be too late to support a motion to dismiss. Because § 7.44 expressly provides that a derivative proceeding shall be dismissed on the corporation's motion based on a determination of a court-appointed panel made in good faith after reasonable inquiry, the statute cannot reasonably be interpreted to apply only to derivative proceedings "commenced after rejection of a demand." "Where a literal interpretation would yield an absurd result, we may presume [] that the Legislature intended exceptions to its language which would avoid results of this character." *Pysz* v. *Contributory Retirement Appeal Bd.*, 403 Mass. 514, 517 (1988), quoting *Porter* v. *Nowak*, 157 F.2d 824, 826 (1st Cir. 1946).

The drafters' comments to § 7.44 also demonstrate that § 7.44 was not designed to deny a corporation the benefit of the business judgment doctrine where a derivative complaint is filed before rejection of the demand. The first paragraph of the comment to § 7.44 explains:

> "A derivative action must be dismissed by the court upon motion by the corporation if either the board or the other shareholders promptly determine not to proceed. That determination can be made prior to commencement of the suit in response to a demand *or after commencement upon examination of the allegations of the complaint*" (emphasis added).

Introduction to comments to G. L. c. 156D, § 7.44, *supra* at 147.

Our conclusion that a corporation may be entitled to dismissal of a derivative proceeding under § 7.44 where it rejects a shareholder's demand after the filing of the derivative complaint finds further support in related sections of G. L. c. 156D. General Laws c. 156D, § 7.43, provides: "If the corporation commences an inquiry into the allegations made in the demand or complaint, the court may stay any derivative proceeding for a period as the court considers appropriate." A court cannot stay a proceeding that has yet to commence, and a derivative proceeding commences only when suit is filed. Therefore, § 7.43 contemplates that a corporation's "inquiry" into a shareholder demand may not be completed before a derivative proceeding is filed, and that it may be appropriate to stay the proceeding to allow completion of the inquiry.[13] If the inquiry no longer had any practical consequence, because as the plaintiff contends the corporation had forfeited any entitlement to dismissal under § 7.44 by failing to reject the shareholder's demand before suit was filed, there would be little reason to stay the proceedings to allow completion of the inquiry. The implication of § 7.43 is that the completion of such an inquiry by the corporation *has* practical consequence, because it may entitle the corporation to a dismissal under § 7.44, and the court, therefore, is given discretion to stay the proceedings, including all discovery, until the inquiry is completed and the motion to dismiss under § 7.44 is decided. As the District Court judge recognized, the plaintiff's reading of § 7.44 (*a*) would defeat the purpose of the Legislature's provision for a stay and render § 7.43 a dead letter. *Halebian* v. *Berv*, 631 F. Supp. 2d 284, 295 (S.D.N.Y. 2007).

Section 7.42, which requires a shareholder to make a written demand on the corporation before commencing a derivative action, provides that a shareholder may file suit before the expiration of the relevant ninety-day or 120-day waiting period where "irreparable injury to the corporation would result by waiting

---

[13]The Task Force's comments confirm that a stay under § 7.43 may be appropriate where the shareholder complaint is timely filed ninety days after demand, "but the inquiry into the matters raised by the demand has not been completed or where a demand has not been investigated but the corporation commences the inquiry *after the complaint has been filed*" (emphasis added). Comment to G. L. c. 156D, § 7.43, *supra* at 146.

for the expiration" of the relevant period.[14] G. L. c. 156D, § 7.42 (2). Applying the plaintiff's interpretation of § 7.44, the judge's allowance of the early filing of a derivative complaint under § 7.42 would not only deprive the corporation of the ninety or 120-day period to evaluate the shareholder's demand before suit could be commenced; it would also deprive the corporation of the opportunity to win dismissal of the suit under § 7.44 after a good faith, independent determination following reasonable inquiry that maintenance of the derivative proceeding would not be in the best interests of the corporation. There is nothing in the statutory scheme to suggest that the Legislature intended such a consequence.

The Legislature's provision in § 7.42 for the early filing of a derivative complaint also refutes the plaintiff's argument that the Legislature intended to limit dismissal under § 7.44 to derivative proceedings "commenced after rejection of a demand" in order to sanction corporations that failed to decide whether to reject or accept the shareholder's demand within the ninety or 120-day period, because a derivative proceeding, with court approval, may be filed before the expiration of these time periods. The plaintiff's argument is also refuted by the commentary to § 7.42, where the drafters recognized that, in some cases, the ninety or 120-day period may provide too little time to conclude the necessary inquiry. The ninety or 120-day periods "have been chosen as *reasonable minimum times* within which the board of directors or the shareholders can meet, direct the necessary inquiry into the charges, receive the results of the inquiry and make its or their decision. In some instances a longer period may be required." (Emphasis added.) Comment 3 to G. L. c. 156D, § 7.42, *supra* at 142.

If we were to adopt the plaintiff's assertion that the Legislature's inclusion of the phrase, "commenced after rejection of a demand," was intended to deny a corporation the benefit of the business judgment doctrine where it failed to reject a shareholder's demand before the filing of a derivative complaint, we

---

[14]"In applying the irreparable injury exception to the [ninety] or 120-day waiting period, the standard to be applied is intended to be the same as that governing the entry of a preliminary injunction." Comment 3 to G. L. c. 156D, § 7.42, *supra* at 142.

would be giving § 7.44 an interpretation that would be in direct conflict with other language in the same section and that would be inconsistent with the statutory scheme embodied in the Act and reflected in the commentary of its drafters. For these reasons, despite the statute's unfortunate inclusion of a phrase that, when read in isolation, would suggest that § 7.44 (*a*) was intended to limit dismissals under the business judgment doctrine to derivative proceedings "commenced after rejection of a demand," we conclude that the Legislature did not intend such a limitation. Rather, we conclude that the Legislature intended that a derivative action must be dismissed under § 7.44 following a corporation's independent determination, made in good faith and after reasonable inquiry, that maintenance of the derivative proceeding is not in the best interests of the corporation, regardless whether the derivative complaint has been filed before or after the corporation's rejection of the shareholder's demand.[15]

3. *Conclusion.* For the reasons stated, we answer, "Yes," to the certified question. The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the Second Circuit, as the answer to the question certified, and will also transmit a copy to each party.

---

[15]After certifying the question, the Court of Appeals also invited "any additional guidance about relevant Massachusetts law or practice that the Supreme Judicial Court may wish to offer in responding to the certified question." *Halebian* v. *Berv*, 590 F.3d 195, 214-215 (2d Cir. 2009). We see no need to provide additional guidance beyond that provided. We also decline to address other questions posed by the parties that have not been included in the certification order. See, e.g., *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 488 n.4 (2009); *Woodward* v. *Commissioner of Social Sec.*, 435 Mass. 536, 538 (2002).