NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12101


FRED CHITWOOD  vs.  VERTEX PHARMACEUTICALS, INC.



Suffolk.     November 9, 2016. - March 20, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.[1]



Corporation, Stockholder, Custodian of corporate records.



Civil action commenced in the Superior Court Department on
August 15, 2013.

The case was heard by Janet L. Sanders, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Steven J. Purcell, of New York (Justin Sherman, of New
York, & Mitchell J. Matorin also present) for the plaintiff.
R. Todd Cronan (William B. Brady also present) for the
defendant.
Ben Robbins & Martin J. Newhouse, for New England Legal
Foundation, amicus curiae, submitted a brief.


GANTS, C.J.  Under G. L. c. 156D, § 16.02 (b), of the

Massachusetts Business Corporation Act (act), a shareholder of a

---

[1] Justice Botsford participated in the deliberation on this
case prior to her retirement.

corporation, upon written notice, is entitled to inspect and copy various categories of corporate records if the shareholder makes the demand "in good faith and for a proper purpose," and if the particular records sought to be inspected are "directly connected" with that purpose.  The plaintiff, Fred Chitwood, a shareholder of the defendant Vertex Pharmaceuticals, Inc. (Vertex or the corporation), made a demand for corporate records pursuant to § 16.02 (b), claiming that inspection of the records was needed to investigate his allegation that the board of directors had committed a breach of its fiduciary duty of oversight with regard to Vertex's financial reporting and insider stock sales.  Vertex "rejected" the demand, claiming that the demand was "invalid under Massachusetts law" and that it was improper because the board, following a reasonable inquiry by a special committee of independent directors, had rejected his earlier demand to commence derivative litigation based on the same allegations of misconduct.  The plaintiff commenced an action in the Superior Court, seeking an order compelling Vertex to make the requested corporate records available to the plaintiff.  After a bench trial, the judge dismissed the complaint with prejudice, concluding that the plaintiff had failed to meet his burden of showing a proper purpose.

The issue on appeal is whether the judge applied the correct standard regarding the proper purpose required to inspect corporate records under § 16.02 (b). We conclude that she did not. Because the judge applied too demanding a standard and because the scope of the demand made by the shareholder far exceeded the authorized scope of inspection under § 16.02 (b), we vacate the judgment dismissing the shareholder's claim for inspection and remand the case for further proceedings consistent with this opinion.[2]

The right of inspection. Under § 16.02, a shareholder of a Massachusetts corporation is entitled to inspect two categories of corporate records. The first category of records, delineated in G. L. c. 156D, § 16.01 (e), includes the corporation's articles of organization and bylaws (and all amendments thereto); resolutions adopted by the board of directors creating one or more classes of shares, and setting the rights, preferences, and limitations of those classes of shares (where the shares issued are outstanding); the minutes of all shareholders' meetings, as well as the records of all actions taken by shareholders without a meeting, for the past three years; all written communications to shareholders within the past three years, including the annual financial statements

---

[2] We acknowledge the amicus brief submitted by the New England Legal Foundation.

provided to shareholders, for the past three years; the names and business addresses of the corporation's current directors and officers; and the corporation's most recent annual report delivered to the Secretary of State.  To inspect the corporate records in this first category, a shareholder need only provide written notice at least five business days before the shareholder wishes to inspect and copy; no showing of good faith or proper purpose is required.  G. L. c. 156D, § 16.02 (a).

The second category of records, delineated in G. L. c. 156D, § 16.02 (b), includes records of "excerpts from minutes reflecting action taken" by the board of directors or a committee acting in place of the board;[3] the "accounting records of the corporation, but if the financial statements of the corporation are audited by a certified public accountant, inspection shall be limited to the financial statements and the supporting schedules reasonably necessary to verify any line item on those statements;" and the list of the names and addresses of all corporate shareholders, showing the number and class of shares held by each.  See G. L. c. 156D, § 16.01 (c).

---

[3] The full text of G. L. c. 156D, § 16.02 (b) (1), provides for the inspection and copying of "excerpts from minutes reflecting action taken at any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under [§ 16.02 (a)]."

To inspect this second category of corporate records a shareholder not only must provide five days' written notice but also must meet the following three requirements:  (1) the shareholder must show that the "demand is made in good faith and for a proper purpose," (2) the shareholder must describe "with reasonable particularity his purpose and the records he desires to inspect," and (3) the shareholder must show that "the records are directly connected with his purpose."  G. L. c. 156D, § 16.02 (c).  In interpreting the meaning of these requirements, we are guided by the comments prepared by the task force on the revision of the Massachusetts business corporation law that drafted the act, "which included more than fifty experienced Massachusetts corporate lawyers."  See Halebian v. Berv, 457 Mass. 620, 625 (2010), citing comment to G. L. c. 156D, 25 Mass. Gen. Laws Ann. at 48 (West Supp. 2010).

"A 'proper purpose' means a purpose that is reasonably relevant to the demanding shareholder's interest as a shareholder."  Comment to G. L. c. 156D, 25A Mass. Gen. Laws Ann. at 46 (West Supp. 2016) (comment).  The drafters also noted that the phrase "proper purpose" is "well understood" and that the "very substantial case law defining 'proper purpose' will continue to be applicable."  Id.  That case law recognizes that "[s]tockholders are the beneficial owners of all the assets of the corporation, and they are entitled to reliable information

as to the financial condition of the corporation, the manner in which business has been conducted and its affairs have been managed, and whether those to whom they have entrusted their property have acted faithfully and efficiently in the interests of the corporation." Albee v. Lamson & Hubbard Corp., 320 Mass. 421, 424 (1946). A proper purpose is one that protects the shareholder's rights as an owner in the corporation and that advances the interests of the corporation itself. Id. A shareholder's purpose is improper where it is driven by "mere curiosity," speculation, or vexatious motives (citation omitted). Gavin v. Purdy, 335 Mass. 236, 239 (1957). See Albee, supra (shareholder has no "right to an examination if his purpose be to satisfy his curiosity, to annoy or harass the corporation, or to accomplish some object hostile to the corporation or detrimental to its interests").

"Good faith," paired as it is with "proper purpose," means that the stated proper purpose also must be the shareholder's true purpose. See Gavin, 335 Mass. at 239 (shareholder must act with "an honest purpose, not adverse to the interests of the corporation"); Albee, 320 Mass. at 424 (stockholder "who is acting in good faith" for proper purpose "is generally entitled to examine the corporate records and accounts"). This understanding of the meaning of good faith is supported by the Uniform Commercial Code's definition of "good faith," which

requires "honesty in fact and the observance of reasonable commercial standards of fair dealing."  G. L. c. 106, § 1-201 (20).

The other requirements -- that the shareholder state his or her purpose and the records sought with reasonable particularity, and that the records sought be connected with that purpose -- allow a fact finder to test whether the shareholder's true purpose is a proper purpose.  See comment, supra at 46 (eliciting "more meaningful statements of purpose" avoids "harassment under the guise of inspection").  Where the specific records sought have no relevant connection to the shareholder's stated purpose, a fact finder may infer that the stated purpose for inspection is not the true purpose, and that inspection of those records is sought for another purpose that the shareholder chose not to articulate because it would likely be found improper.[4]

Where a shareholder makes a demand in good faith and for a proper purpose, stated with reasonable particularity, for records that are relevant to that purpose, the corporation must allow the inspection unless it can show that it has "determined in good faith that disclosure of the records sought would

_____

[4] The drafters note that, where a corporation disputes the "connection" or relevancy of the requested records, a judge may review the records in camera before determining the validity of the claim.  Comment to G. L. c. 156D, § 16.02, 25A Mass. Gen. Laws Ann. at 46 (West Supp. 2016).

adversely affect the corporation in the conduct of its business or, in the case of a public corporation, constitute material non-public information at the time when the shareholder's notice of demand to inspect and copy is received by the corporation." G. L. c. 156D, § 16.02 (c) (4). Where the corporation for any reason does not allow the inspection and copying of the requested records within a reasonable time, the shareholder may apply to the Superior Court for an order to permit inspection and copying, and that application shall be adjudicated "on an expedited basis." G. L. c. 156D, § 16.04 (b).

The right of inspection under § 16.02 is "an independent right of inspection"; it is not intended to substitute for or diminish any rights of inspection that may exist under another statute, the common law, or the right of discovery in shareholder litigation. See G. L. c. 156D, § 16.02 (e); comment, supra at 46.

Background. We turn now to the complaint under § 16.04 (b) that initiated this litigation. According to that complaint, the defendant corporation develops and manufactures drugs for the treatment of serious diseases. In the spring of 2012, the corporation announced in a press release the interim results of "phase two" of a study regarding the effectiveness of two of its drugs to treat cystic fibrosis. As a result of that announcement, which suggested a medical breakthrough, the

corporation's stock price "rose precipitously." Three weeks later, the corporation issued a new press release, which suggested that the phase two study did not reflect a medical breakthrough, and the corporation's stock price declined on this news. Between the first and the second announcement, seven of the corporation's officers and directors sold over $37 million in corporation stock.

In November, 2012, the plaintiff[5] sent a letter to the corporation's board of directors detailing what he characterized as the "false and misleading statements" in the first announcement and identifying the officers and directors he contended had wrongfully engaged in insider trading prior to the second announcement. He demanded that the board initiate litigation on behalf of the corporation against the parties responsible for issuing the false and misleading statements, require the insiders who profited from the insider trading to disgorge the profits, and that the board institute meaningful corporate reforms.

In response, the board established a special committee of independent directors to investigate the plaintiff's allegations, and retained outside counsel to assist in the

---

[5] The plaintiff became the interested shareholder and replaced the person identified in the November, 2012, letter to the corporation's board of directors after it became clear that the individual identified in the November letter was not in fact a shareholder at the time of the relevant events.

investigation.  In April, 2013, the board informed the plaintiff by letter that the special committee had completed its investigation and reported its findings to the board, and that a majority of the independent directors had determined that there was no breach of fiduciary duty by any officer or director of the corporation and that a shareholder derivative action was not in the best interests of the corporation.  The letter briefly described the conduct of the investigation and provided a summary of its principal findings, but did not append the written report provided by the special committee to the board.

On June 19, 2013, the plaintiff shareholder made a written demand under § 16.02 to inspect the corporation's books and records "to investigate potential wrongdoing, mismanagement, and breaches of fiduciary duties by the members of the [b]oard or others in connection with the events, circumstances, and transactions" described earlier.  The shareholder asserted that he did not believe the corporation's investigation "properly or adequately responded to the concerns expressed" in the November, 2012, letter demanding the initiation of shareholder derivative litigation.  The shareholder demanded the inspection and copying of seven categories of records, including the records and minutes of all meetings of the board and the special committee regarding these issues, the special committee's final report and any drafts of the report, all documents distributed at any

meeting of the board or the special committee, all documents concerning the results of the internal review of the phase two study, copies of all policy and procedure manuals and other documents describing the corporation's internal control practices regarding the selection and oversight of contractors to perform drug trials and studies for the corporation, and calendars to show the number and duration of meetings of the board and the special committee.

On June 26, the board, through counsel, rejected the June 19 demand for inspection and identified four reasons for the rejection.  First, the board contended that the demand was not made for a "proper purpose" because the shareholder sought the inspection of the corporation's books and records under § 16.02 for the purpose of investigating potential wrongdoing but had failed to present any credible basis to infer that that were legitimate issues that warranted further investigation.

Second, the board contended that the demand lacked a "proper purpose" because it essentially sought discovery in support of the shareholder's derivative demand allegations that the shareholder would be barred from obtaining had he brought a shareholder derivative action under G. L. c. 156D, § 7.44.  The board noted that § 7.44 provides that a derivative action commenced after rejection of a demand shall be dismissed on motion of the corporation where a judge finds that a majority of

the independent directors present at a meeting of the board of directors (where the independent directors constitute a quorum) had determined in good faith after conducting a reasonable inquiry that a derivative action would not be in the best interests of the corporation. The board also noted that a court may stay discovery in a derivative proceeding while the corporation's motion to dismiss is pending. See G. L. c. 156D, § 7.43.

Third, the board claimed that the demand was "overbroad and far exceeds the narrow scope of records available for inspection" under § 16.02.

Fourth, the board claimed that it had made a good faith determination that disclosure of the records sought would adversely affect the corporation in the conduct of its business, and that the requests call for the disclosure of non-public material information.

On August 15, 2013, the shareholder filed suit under G. L. c. 156D, § 16.04, seeking an order compelling the corporation to allow the inspection and copying of the books and records he had demanded in his June 19 letter. The shareholder's complaint, which, under § 16.04 (b), was to be resolved on an "expedited basis," was not resolved for nearly two years when, on August 4, 2015, final judgment entered dismissing the complaint with prejudice. During those two years, cross motions for judgment

on the pleadings were denied, as was the corporation's motion for summary judgment, and evidence was taken during a one-day bench trial where the plaintiff shareholder and a board member of the corporation, who also served as chair of its audit committee, testified.

In her findings of fact and conclusions of law, the trial judge recognized that the plaintiff shareholder's demand was overbroad and that, if he prevailed, his right to inspect corporate records under § 16.02 (b) would be limited to "excerpts from minutes reflecting any action taken at any meeting of the board of directors [and] records of any action of" the special committee. The judge concluded that the plaintiff was not entitled to inspect even this narrow swath of records because he had failed to meet his burden of showing a proper purpose. The judge noted that the chronology of events regarding the sale of stock by corporate insiders after "the admittedly erroneous May 7 press release" and before the "May 29 correction" had prompted a United States Senator to ask the Securities and Exchange Commission to examine the matter. But the judge declared that, where a shareholder seeks to inspect corporate records under § 16.02 (b) to investigate allegations of corporate wrongdoing and mismanagement, the shareholder "must present some evidence of wrongdoing; simply relying on the timing of certain events is not sufficient" (emphasis in

original).[6]  The judge found that the shareholder had offered no

evidence "calling into question the independence of the

[s]pecial [c]ommittee or the diligence of its efforts."

The judge found additional support for her conclusion that

the plaintiff is not entitled to inspection of the records under

§ 16.02 because she concluded that, if the shareholder were to

bring a derivative suit under G. L. c. 156D, § 7.44, based on

the evidence he presented at trial, he would not be entitled to

any discovery.  The judge noted that a corporation in a

derivative action is entitled to dismissal if a majority of the

independent directors present at a board of directors meeting

(where the independent directors constitute a quorum) determine

"in good faith after conducting a reasonable inquiry upon which

its conclusions are based that the maintenance of the derivative

proceeding is not in the best interests of the corporation."

§ 7.44 (a).  The judge also noted that, if the corporation were

to move to dismiss a derivative action, all discovery would be

stayed pending resolution of the motion unless the judge, on

---

[6] The judge found guidance in a Massachusetts Superior Court decision which declared that "a purpose to investigate possible waste, mismanagement or other wrongdoing is a proper purpose under [the Delaware inspection statute, [Del. Code Ann. tit. 8, § 220 (LexisNexis 2011)], provided that the shareholder presents some evidence that establishes a credible basis from which a court can infer the existence of legitimate issues as to such conduct warranting further investigation."  Gent vs. Teradyne, Inc., Superior Court, No. 07-04676-BLS2 (Oct. 8, 2010), citing Seinfeld v. Verizon Communications, Inc., 909 A.2d 117, 118, 122 (Del. 2006).

good cause shown, ordered that specified discovery be conducted. § 7.44 (d). In the absence of good cause, discovery would proceed only if the motion to dismiss were denied, and the motion would be denied only where the shareholder had alleged "with particularity" facts that rebutted the facts presented by the corporation showing that a majority of the board of directors was independent when the independent directors decided not to proceed with the derivative action and that their determination was made in good faith after conducting a reasonable inquiry. Id. The judge concluded that allowing inspection under § 16.02 would render those limitations on discovery "meaningless."

Discussion. Viewed from the perspective of the appellate bench, this was an expensive litigation war of attrition that was fought over nearly nothing. The seven categories of records that the shareholder demanded under § 16.02 far exceed the scope of records that are within the right of inspection under § 16.02. They are precisely the type of records that a plaintiff shareholder might seek in discovery in a derivative action in an attempt to show that the special committee's inquiry into the allegations was not reasonable or that the independent directors did not act in good faith. But, as the judge found, within these seven categories of records, the only records within the scope of the right of inspection under

§ 16.02 were the excerpts of minutes or comparable records that reflected the actions taken at meetings of the board of directors or meetings of the special committee. The drafters' comments make clear that they intended "to permit inspection of votes or action taken on relevant matters, not of reports, discussion or decisions not to act on a matter." Comment, supra at 45. The drafters added, "Shareholders may have a legitimate interest in reviewing whether action was properly taken by the board of directors, but giving them a statutory right to examine the remainder of the minutes of a board or committee meeting could inhibit frank discussion or the disclosure of sensitive matters to the directors to enable them to exercise their fiduciary responsibilities." Id. In short, under § 16.02, a shareholder is entitled to inspect the original minutes of a board or committee meeting only to learn what action was taken at those meetings; it does not provide a right of inspection of the documents that were provided to board members for consideration of that proposed action or of the minutes memorializing the debate at the board or committee meeting as to whether to take that action.

Where, as here, a shareholder demands that the corporation initiate a derivative action based on allegations of insider trading after an inaccurate public announcement of the results of drug testing that suggested an apparent scientific

breakthrough, and where the corporation declines to do so, a shareholder has a proper purpose in asking to inspect the excerpts of the original minutes of the meetings of the board of directors and the special committee that reflect the actions taken at those meetings regarding the requested derivative action.[7]  The minutes may well say nothing different regarding these actions from what the corporation's attorney described in the letter informing the shareholder of the corporate decision to decline to proceed with the derivative action, but the shareholder is entitled, as the Russian proverb says, to "trust but verify."[8]  The shareholder need not, as the judge ruled, provide evidence of wrongdoing beyond the timing of the press releases and the insider trades to obtain these excerpts of the original minutes.  The desire to verify the action taken by the special committee and the board in response to these allegations is a purpose that is "reasonably relevant to the demanding shareholder's interest as a shareholder."  See comment, supra at 46.

---

[7] The mere fact that the plaintiff's request was indeed overbroad does not alone establish an absence of good faith.

[8] The Russian proverb "trust, but verify" became famous in the United States when former President Ronald W. Reagan quoted it with respect to his nuclear disarmament discussions with the Soviet government.  See e.g., The Signing: 'Universal Significance for Mankind,' N.Y. Times, Dec. 9, 1987, at A21.

The judge erred in applying a standard derived from Delaware law in determining whether the shareholder had a proper purpose. In Delaware, as in Massachusetts, a shareholder's desire to investigate corporate wrongdoing or mismanagement is a proper purpose. See Seinfeld v. Verizon Communications, Inc., 909 A.2d 117, 121 (Del. 2006); Varney v. Baker, 194 Mass. 239, 240-241 (1907). But the scope of corporate records that potentially may be inspected to conduct such an investigation under the Delaware counterpart of § 16.02 is far greater than under § 16.02, because the Delaware statute permits inspection of a corporation's "books and records," without specifying which books and records. See Del. Code Ann. tit. 8, § 220(b)(1) (LexisNexis 2011). Under Delaware law, a shareholder may identify the category of corporate records he or she seeks to inspect, and the scope of inspection is left to the sound discretion of the judge. See Del. Code Ann. tit. 8, § 220(c)(3) ("The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the Court may deem just and proper"); United Techs. Corp. v. Treppel, 109 A.3d 553, 557-558 (Del. 2014) (court has broad discretion to determine scope of inspection and use of information gathered); Security First Corp. v. U.S. Die Casting & Dev. Co., 687 A.2d 563, 569 (Del.

1997) (judge "has wide latitude in determining the proper scope of inspection").

In Seinfeld, supra at 118-119, the shareholder alleged that three corporate executives were paid more than authorized in their employment contracts, and the shareholder sought to inspect the corporate books and records related to their compensation. Where an inspection's purpose is to investigate possible corporate wrongdoing or mismanagement, the Delaware Supreme Court requires the shareholder to show, "by a preponderance of the evidence, a credible basis from which the [court] can infer there is possible mismanagement that would warrant further investigation." Id. at 123. "That 'threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing." Id., quoting Security First Corp., 687 A.2d at 568.

This burden is modest but it is more demanding than is appropriate for the more limited scope of books and records subject to inspection under § 16.02. The inverse of the Biblical adage that to whom much is given, much is expected is that to whom less is given, less is expected. See Luke 12:48 (Revised Standard Version). The corporate records sought in Seinfeld might be outside the scope of inspection in Massachusetts under § 16.02, as might many investigative

requests for corporate books and records that may be permissible under Delaware law.  Where a shareholder seeks corporate books and records under § 16.02 and claims a proper purpose of investigating corporate wrongdoing or mismanagement, the shareholder demonstrates a proper purpose where he or she identifies particular facts or circumstances that permit a reasonable inference that the requested books and records could possibly reveal information that would tend to indicate the existence of corporate wrongdoing or mismanagement.  Such a showing, if made in good faith, suffices to show that the shareholder's purpose is not driven by "mere curiosity" or speculation.  See Gavin, 335 Mass. at 239.

The judge also erred in concluding that, where a shareholder's derivative demand has been declined by the corporation, the shareholder, to show a proper purpose, must present some evidence that the majority of the board of directors who voted to decline were not independent or that their determination was not made in good faith or that the inquiry on which they based they determination was not reasonable.  Essentially, the judge imposed a burden on the shareholder seeking to inspect corporate books and records under § 16.02 that was comparable to the burden placed on a plaintiff shareholder under § 7.44 (d) to defeat a motion to dismiss brought by the corporation that had declined the plaintiff's

derivative demand.[9]  Section 16.02, however, provides "an

independent right of inspection," and its drafters made clear in

their comments that the right of inspection under § 16.02 is

available "at any time."  Comment, supra at 45, 46.  A demand

for inspection under § 16.02 may be made before or after the

filing of a shareholder derivative action, and the definition of

"proper purpose" is not altered by its timing.  Indeed, a

shareholder has a right of inspection under § 16.02 even if the

shareholder derivative action he or she sought to initiate has

been dismissed.  To be sure, the dismissal of a related

shareholder derivative action may be relevant in determining

whether the demand for inspection under § 16.02 is made in good

faith or to harass the corporation, but the right of inspection

under § 16.02 is not restricted by the limits of discovery under

§ 7.44 (d).[10]

---

[9] We understand why the judge believed that the allowance of
inspection of the plaintiff shareholder's overbroad request for
books and records would have frustrated the limitations of
discovery under § 7.44, because the vast majority of those
documents are outside the scope of § 16.02 and would be
available only through civil discovery in a shareholder
derivative suit.  But the appropriate course of action is to
isolate which of the documents in the inspection request fall
within the scope of § 16.02, and then determine whether there is
a proper purpose to order inspection of that subset of
documents.

[10] Because the shareholder here did not assert a common-law
right to inspect corporate books and records, we do not address
whether the common-law right of inspection survives after the
enactment of G. L. c. 156D, §§ 16.01 and 16.02, or, if it does

Conclusion.  The judgment of dismissal is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this decision.

So ordered.

---

survive, whether it provides a shareholder with a greater right of inspection than provided under these statutes.