# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2023

Lyle W. Cayce
Clerk

_____

No. 20-10649

_____

SUSAN LANOTTE, *derivatively on behalf of* HIGHLAND GLOBAL ALLOCATION FUND, *and on behalf of herself and all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; TIMOTHY HUI; BRYAN WARD; BOB FROEHLICH; JOHN HONIS; ETHAN POWELL; HIGHLAND GLOBAL ALLOCATION FUND, *Nominal Defendant*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-2360

_____

Before WIENER, DENNIS, and DUNCAN, *Circuit Judges*.

JAMES L. DENNIS, *Circuit Judge*:[*]

Plaintiff Susan Lanotte appeals the district court's dismissal of her shareholder derivative suit on behalf of the Highland Capital Global

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 20-10649

Allocation Fund after the court found a majority of the independent trustees constituting a quorum voted to reject Plaintiff's demand after a reasonable and good faith investigation. Finding no error, we AFFIRM.

## I.

Susan Lanotte is a shareholder of nominal defendant Highland Capital Global Allocation Fund ("GA Fund"), a business trust organized under the laws of Massachusetts. Highland Capital Management Fund Advisors, L.P. ("Advisor"), manager of the GA Fund, had the GA Fund invest in the Highland Energy MLP Fund ("MLP Fund")—which the Advisor also managed—at a time when the MLP Fund's value was dropping. Proceeding under the federal district court's diversity jurisdiction, Lanotte brought a shareholder derivative action under Massachusetts law on behalf of the GA Fund against the Advisor and five of the GA Fund's six trustees—Timothy Hui, Brwayn Ward, Bob Froehlich, John Honis, and Ethan Powell ("Trustees") (collectively, "Defendants").[1] Lanotte alleged breach of contract and breach of fiduciary duty.

The Defendants brought a motion to dismiss the derivative suit pursuant to chapter 156D, § 7.44 of the Massachusetts General Laws, arguing that a quorum of its independent trustees—the five Trustees above—voted to reject Lanotte's demand after a reasonable and good faith investigation.[2] The district court agreed and dismissed the suit. Lanotte appealed.

---

[1] Lanotte also styled the case as a purported class action on behalf of the GA Fund's other shareholders.

[2] The parties agree the sixth trustee was not independent. This trustee did not participate in the meeting and recused himself from the evaluation of Lanotte's demand.

No. 20-10649

## II.

There is no established standard of review in this circuit for an appeal from a district court's granting of a § 7.44 motion to dismiss. However, as this case concerns a motion similar to either a Rule 12(b)(6) motion to dismiss or Rule 56 motion for summary judgment, *de novo* review is appropriate. *See Halebian v. Berv* (*Halebian VI*), 548 F. App'x 641, 642 (2d Cir. 2013); *see also Booth Family Tr. v. Jeffries*, 640 F.3d 134, 139–41 (6th Cir. 2011) (reviewing *de novo* under similar circumstances, applying Delaware state law regarding dismissal by special litigation committee).

## III.

"The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). Shareholder derivative suits in Massachusetts are governed by the Massachusetts Business Corporation Act ("MBCA"). *See* Mass. Gen. Laws ch. 156D, §§ 7.40-7.47.[3]

The focus of this appeal is chapter 156D, § 7.44 of the Massachusetts General Laws, which states, in pertinent part, that a derivative proceeding

---

[3] The GA Fund is a "business trust" organized under the laws of Massachusetts, not a corporation. However, the Massachusetts Supreme Judicial Court has held that the MBCA's shareholder derivative provisions apply to business trusts as if they were corporations. *See Halebian v. Berv* (*Halebian III*), 931 N.E.2d 986, 988 n.4 (Mass. 2010).

"shall be dismissed by the court on motion by the corporation" if "a majority vote of independent directors present at a meeting of the board of directors if the independent directors constitute a quorum" "has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation." *Id.* §§ 7.44(a), (b)(1). According to the Massachusetts Supreme Judicial Court, § 7.44 "incorporate[s]" the "business judgment doctrine." *Halebian III*, 931 N.E.2d at 991; *see id.* at 991, n.11 ("In the context of a derivative proceeding, the business judgment doctrine protects a corporation's decision that prosecution of the claim demanded by the shareholder is not in the best interests of the corporation where the decision is made in good faith by independent decision makers after reasonable inquiry.").

Lanotte contends on appeal that the district court (1) utilized the wrong legal standard to evaluate whether trustees were "independent," (2) erred by finding that a majority of the trustees were independent, and (3) erred by finding that the decision to reject Lanotte's demand was made in good faith and based on a reasonable investigation. We address each issue in turn.

The MBCA does not define what makes a director (or in this case, a trustee) "independent," and there is no state appellate case law on the question. *See Blake v. Friendly Ice Cream Corp.* (*Blake II*), No. Civ. 03-0003, 2006 WL 2714976, at *1 (Mass. Super. Ct. Aug. 24, 2006). The parties disagree on the correct legal standard. Lanotte cites a "totality of the circumstances" test described in a trial court decision, *Blake v. Friendly Ice Cream Corp.* (*Blake I*), No. Civ. 03-0003, 2006 WL 1579596, at *12–13 (Mass. Super. Ct. May 24, 2006). Defendants cite a different section of the Massachusetts General Laws, chapter 182, § 2B, which states that "a trustee of a trust who with respect to the trust is not an interested person, as defined

in [the] Investment Company Act of 1940, shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee." Section 2B applies to a "a trust that is an investment company, as defined in the Investment Company Act of 1940" and is registered with the U.S. Securities and Exchange Commission.[4] MASS. GEN. LAWS ch. 182, § 2B. The GA Fund meets these requirements. The district court agreed with the Defendants and applied § 2B in determining whether the trustees were "independent." We agree as well.

The district court properly applied the rules of statutory interpretation in concluding that § 2B is the relevant standard for a trust that is an investment company like the GA Fund. Section 2B was in force at the time that § 7.44 was enacted. The Legislature is presumed to "act[] with full knowledge of existing laws," such that courts should be hesitant to imply that a new law has repealed or superseded a prior law in whole or in part. *All. to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd.*, 932 N.E.2d 787, 796 (Mass. 2010). "In the absence of explicit legislative commands to the contrary, we construe statutes to harmonize and not to undercut each other." *Sch. Comm. of Newton v. Newton Sch. Custodians Ass'n*, 784 N.E.2d 598, 608 (Mass. 2003). The district court correctly reasoned that there is not necessarily a conflict between § 7.44 and § 2B because the two statutes can be applied together, but that to the extent there is a conflict, § 2B should govern as the more specific statute applicable to the trustees. *See Bos. Hous. Auth. v. Labor Relations Comm'n*, 500 N.E.2d 802, 804 (Mass. 1986) ("[I]n

---

[4] *Blake I*, cited by Lanotte, did not involve a trust that is an investment company, so § 2B was not at issue. *See Blake I*, 2006 WL 1579596, at *1. No courts have definitively held whether § 2B supplies the independence standard for a trust that is an investment company after enactment of the MCBA, although one court applied it in the alternative when all parties agreed it was a relevant standard. *See Halebian v. Berv* (*Halebian V*), 868 F. Supp. 2d 420, 447-48 & n.26 (S.D.N.Y. 2012), *aff'd*, *Halebian VI*, 548 F. App'x 641.

the case of conflicting statutes, normally the more specific statute will prevail over the more general statute."); *N. Shore Vocational Reg'l Sch. Dist. v. City of Salem*, 471 N.E.2d 104, 107 (Mass. 1984) ("In the absence of irreconcilable conflict between an earlier special statute and a later general one the earlier statute will be construed as remaining in effect as an exception to the general statute.").[5]

Nor did the district court err in concluding a majority of the board of trustees was independent under § 2B. Section 2B states a trustee is independent if he or she is not an "interested person" as defined in the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-2. As relevant here, the ICA defines an interested person as "any affiliated person" of an investment company or investment advisor, "any member of the immediate family" of an "affiliated person," or an "interested person of any investment advisor" for the investment company. *Id.* § 80a-2(a)(19)(A)(i)-(iii), (B)(i)-(ii). An "affiliated person" of another is defined, in relevant part, as "any person directly or indirectly controlling, controlled by, or under common control with, such other person" or "any officer, director, partner, copartner, or employee of such other person." *Id.* § 80a-2(a)(3). "Control" is defined as "the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company," and "[a] natural person shall be presumed not to be a controlled person." *Id.* § 80a-2(a)(9).

The Defendants set forth adequate facts to show a majority of the board of trustees was independent at the time it rejected Lanotte's demand, and the burden was on Lanotte to "allege[] with particularity facts rebutting

---

[5] Because the issue of the proper standard is resolved through application of the rules of statutory interpretation, we decline Lanotte's request to certify the question to the Massachusetts Supreme Judicial Court. *See* Mass. Sup. Jud. Ct. R. 1:03.

the corporation's filing." Ch. 156D, § 7.44(d). Lanotte does not meaningfully argue her allegations show the Trustees were under the controlling influence of another. Lanotte reiterates her arguments made before the district court that all five trustee defendants lacked independence due to "structural conflicts," because (1) they all held "dual role" as board members of both the GA Fund and the MLP Fund; (2) they face substantial risk of personal liability; and (3) they were all appointed by other board members instead of elected by shareholders. She further argues that the Trustees had a variety of personal conflicts arising from past employment, business, and personal relationships with the Advisor. We agree with the district court's analysis and conclusion that these allegations do not show a controlling influence over the Trustees.

Finally, the district court correctly found the Trustees' decision to reject Lanotte's demand was made in good faith and based on a reasonable investigation. Because a majority of the board of trustees was independent at the time the determination was made, the burden is on Lanotte to show these requirements have not been met. *Id.* § 7.44(e). In such a case, "Massachusetts presumes that a decision to reject a shareholder demand was the exercise of valid business judgment, 'absent a showing of bad faith or lack of investigation into the demand.'" *Halebian VI*, 548 F. App'x at 646 (quoting *Harhen v. Brown*, 730 N.E.2d 859, 867 (Mass. 2000)). Mere "failure to interview certain individuals or review the documents" identified by a plaintiff is insufficient to overcome a presumption that an investigation was reasonable when a committee considers other relevant witnesses and documents that relate to the same issue and produces a report that provides "plausible reasons." *See Averbuch v. Arch*, No. SUCV201102502, 2013 WL 5531396, at *4–5 (Mass. Super. Ct. Aug. 27, 2013); *see also Harhen*, 430 N.E.2d at 847 ("[L]engthy explanations of a demand refusal are not required.").

No. 20-10649

In this case, the board of trustees formed a Demand Review Committee consisting of two independent board members, which held sixteen meetings; hired independent counsel, who billed for one-thousand hours of attorney time; reviewed thousands of pages of documents; interviewed ten witnesses; met with Lanotte; and asked Lanotte for any relevant documents she had. The Committee produced a ninety-six-page report recommending rejecting Lanotte's demand.

Lanotte's attacks on the Committee's investigation are unavailing. She argues the Committee improperly considered the independence of the Trustees by relying on § 2B, but we have already rejected that argument. Further, Lanotte's arguments that the Committee did not address whether it was proper to invest in the MLP Fund and did not investigate the Advisor's motivations for investing in the MLP Fund are contradicted by the report, and her arguments that the Committee did not review certain non-public documents and did not interview more witnesses are largely vague and speculative and do no show the other relevant evidence the Committee considered in their place to be inadequate. We agree with the district court's analysis and conclusion that the alleged shortcomings identified by Lanotte do not show the board of trustees' decision to reject her demand was made in bad faith or based on an unreasonable investigation.

## IV.

The judgment of the district court is AFFIRMED.